OPINION OF THE COURT
Vincent E. Doyle, J.
This special proceeding originally was commenced on December 17, 1981 by petitioner, Delbert Ode, in his individual capacity. It has proceeded with testimony given by a number of witnesses and is expected to continue. On November 5, 1982, this court granted an unopposed[1] motion of the petitioners to amend the petition, inter alia: (1) by adding petitioners Carlos Santiago, Noah Lazore and *618 Ralph Richmond; (2) by adding as parties: Thomas A. Coughlin, III, Commissioner of Correctional Services; J. Kevin McNiff, Chairman, Commission of Corrections, State of New York; Joseph Wasser, Commissioner, Commission of Corrections, State of New York; and Katherine Webb, Commissioner, Commission of Corrections, State of New York (or their successors in office); (3) by conforming certain allegations to the proof already taken; and (4) by clarifying the prayers for relief. This court also granted the petitioners the permission to serve supplemental notices of petition together with a second amended petition upon the respondents.
The petitioners have moved, pursuant to CPLR article 9, for an order certifying this proceeding as a class action on behalf of all persons now or hereafter confined in facilities of the New York State Department of Correctional Services (hereinafter DOCS). They also seek, in the second amended petition: (1) a declaration concerning the implementation of the grievance program; (2) an order requiring the respondent Coughlin to withdraw directive No. 4040 and, instead, to implement properly promulgated regulations; (3) or in the alternative, a declaration that the inmates need not exhaust the grievance process prior to going to court; (4) an order requiring respondents Coughlin, McNiff, Wasser and Webb to implement steps to process grievances expeditiously; (5) an order requiring the respondents to develop and enforce regulations and mechanisms to ensure indexing and availability of grievance decisions; (6) an order requiring the implementation of a training program for correctional staff involved in the grievance resolution program; and (7) costs, disbursements and attorneys’ fees.[2]
The respondents oppose the motion for class certification on a number of grounds. Chief among these objections is that a class action is not superior to other available methods for resolving this controversy. The respondents contend that since this litigation involves governmental operations, it is not a proper case for class action status. They stress that other inmates similarly situated to the petition *619 ers herein will be adequately protected under the principles of stare decisis so as to obviate the need for class status (Matter of Martin v Lavine, 39 NY2d 72; Matter of Jones v Berman, 37 NY2d 42, 57; Matter of Rivera v Trimarco, 36 NY2d 747).
The “governmental operations” rule of Rivera (supra) and its progeny means that when governmental operations are involved, stare decisis usually will afford adequate protection to both present and future members of the class and, therefore, class certification is unnecessary. It can best be rationalized as performing a housekeeping function, for it is most often invoked when “[T]here is no compelling need to grant class action relief * * * in light of the enormity of the administrative problem which would be posed in implementing [the court’s] decision” (Matter of Martin v Lavine, supra, p 75). Indeed, in each of the seminal cases in this field dealing with allegedly invalid administrative action, the proposed class of possible petitioners was not readily definable and the complained of administrative actions were unlikely to reoccur.
The present case is easily distinguishable from these cases in which the governmental operations rule has been invoked to deny class status. The proposed class is clearly identifiable, and this court has reason to believe the complained of administrative actions may very likely reoccur. Furthermore, assuming the petitioners ultimately prevail in their individual capacities in the absence of class relief, a plethora of similar proceedings brought by other inmates (each pro se) for the identical relief would undoubtedly ensue (Peare v Suffolk County Sewer Agency, 67 AD2d 967; Ammon v Suffolk County, 67 AD2d 959, 960; Beekman v City of New York, 65 AD2d 317). This court, perhaps more than most, is acutely aware of the disproportionately large amount of litigation brought by inmates, and of the resulting heavy burden, in terms of time and manpower, it puts on the judicial system.
Most importantly, however, this court does not believe that in this particular situation stare decisis will adequately or properly protect the interests of the proposed class. The governmental operations rule assumes that governmental officials will understand that they are bound by *620 stare decisis and will follow precedent. Nevertheless, when the basis for this assumption is found to be shaky, if not completely missing, then the hesitancy of the court to treat the matter as a class action begins to disappear.
The record of the respondents for complying with court orders, case law and their own directives has been established to be poor at best. This finding is primarily grounded in testimony presented in the instant proceeding and in two incidents surrounding it.
First, Henry Hoornweg has testified herein that while he was serving as an inmate member of the Inmate Grievance Resolution Committee (IGRC), at the Attica Correctional Facility, he was transferred to Clinton Correctional Facility without a due process hearing. The Appellate Division, Third Department, in Matter of Johnson v Ward (64 AD2d 186) held that before an inmate member of an IGRC may be transferred during his term of office, he must receive a due process hearing. The hearing is commonly referred to as a “Johnson hearing”. The DOCS, rather than appealing the Johnson decision to the Court of Appeals, amended its directive No. 4040 to reflect the Appellate Division’s holding. In fact, the Johnson case is specifically cited in that directive. Respondent Superintendent Smith also testified in the instant proceeding concerning Mr. Hoornweg’s transfer and his failure to provide Mr. Hoornweg with a Johnson hearing. He said: “And knowing full well that it was contrary to the directive [Directive #4040], but also being more concerned for the overall safety and operation of that institution [Attica Correctional Facility], I agreed that he should go.”
Respondent Smith, thus, intentionally disregarded directive No. 4040, and, therefore, the holding of Johnson (supra), by not providing Mr. Hoornweg with a due process hearing apparently because he thought it should have encompassed some sort of “emergency” exception. Of all people, Superintendent Smith, a guardian of those judged guilty of violating the law, must realize he is bound to follow the law whether or not he personally feels it is sufficiently responsive to the demands of differing factual situations (see White v Smith, US Dist Ct, WDNY, Dec. 30, 1982, p 7, Elfvin, J.).
*621 Second, this court has also been made aware of an incident involving the Wyoming County Clerk, David R. Hurlburt. On January 11, 1983, during the pendency of this proceeding, Mr. Hurlburt received a telephone call from Patricia Priestley, Inmate Records Coordinator, II, at Attica Correctional Facility. She informed him that the then Acting Superintendent Richard Feitz[3] had instructed her to transfer petitioner Delbert Ode from Attica Correctional Facility to another correctional facility, but that she wanted Hurlburt’s advice before taking such action. Hurlburt cautioned her that a transfer would not be feasible.
Although Delbert Ode has not been transferred, the conduct of the respondents, in even considering such a move, flies in the face of this court’s clearly worded order dated June 29,1982 enjoining them from transferring him to any other facility. To find out that the then acting superintendent was contemplating transferring Ode, while the injunction was in effect, is disturbing. The respondents have offered no explanation whatsoever for the acting superintendent’s behavior. Even supposing Mr. Feitz was actually unaware of this court’s order when he directed Ms. Priestley to transfer Mr. Ode, the fact that he was unaware serves to point out more clearly the need to refrain from applying the governmental operations rule to this case. If the respondents have difficulty keeping track of and following a recently issued and unambiguous judicial order, directed at themselves, it seems more unlikely that they will be able to stay abreast of and abide by precedential case law.
Third, contrary to the affidavit, dated November 17, 1982, submitted by respondents’ counsel in opposition to this motion, the New York State Inmate Grievance Program and directive No. 4040 have not been certified by the Federal courts as being in compliance with the standards of the Federal Civil Rights of Institutionalized Persons Act (US Code, tit 42, § 1997e) or the act’s corresponding regulations (28 CFR 40.1 et seq.; 46 Fed Reg No. 190, Oct. 1,1981, pp 48,186 et seq.). The Federal statute provides that before an inmate may be required to exhaust his administrative *622 remedies when bringing a section 1983 (US Code, tit 42, § 1983) action, those remedies must first be certified by the Attorney General or the Federal court to be plain, speedy and effective.
The petitioners have submitted a copy of a letter dated December 6, 1982, signed by Ramon Rodriguez, Associate Commissioner and Counsel to the DOCS, and sent to United States District Court Judge David N. Edelstein (Southern Dist), in which Rodriguez explains that Judge Edelstein should deem the letter to be notice, pursuant to 28 CFR 40.12 of DOCS’ intent to seek Federal court certification of the New York State inmate grievance procedure. Because the DOCS is well aware that the grievance procedure is being attacked herein on the ground it is neither fair, simple nor expeditious, and that this proceeding has been continuing since December 17, 1981, it appears obvious that the DOCS is attempting to circumvent this court’s jurisdiction.
In light of the above testimony and circumstances, this court declines to invoke the governmental operations rule to deny class status in this proceeding.
With respect to the other statutory prerequisites for class actions (CPLR 901), this court must consider whether the class is so numerous that joinder of all the class members is impracticable (CPLR 901, subd a, par 1). The petitioners have alleged in their second amended petition that the number of persons confined in facilities of the DOCS is in excess of 27,000.
The respondents argue that the number of inmates who actually file grievances does not approach the 27,000 figure. They also urge that any one inmate can be responsible for filing numerous grievances.
Even though CPLR article 9 speaks of numbers, no quantity is set forth therein for determining when the membership becomes so numerous that joinder should be deemed impracticable (Siegel, NY Prac, § 141, p 179). The court necessarily must exercise its discretion and look to the circumstances of each case (Friar v Vanguard Holding Corp., 78 AD2d 83, 96).
*623 Although it is true that some inmates file more grievances than others, and that some inmates do not file any grievances, the respondents cannot dispute that every inmate has a right to do so (Correction Law, § 139) or that in the year period April, 1981-April, 1982, over 1,400 grievances were logged at Attica alone. Undoubtedly, grievances will continue to be filed with such frequency, and unsatisfied grievants will attack in court those detailed procedures set forth in directives Nos. 4040 and 4041 on the grounds they violate due process or are in contravention of section 139 of the Correction Law. This court, thus, finds that joinder of all of the potential class members would be impracticable and that the numerosity requirement has been met.
The next prerequisite of CPLR 901 is that common questions of law or fact must predominate over any questions affecting only individual class members (CPLR 901, subd a, par 2). The statute obviously does not require that all issues be common (Ware v Caldwell & Cook, 90 AD2d 698; Friar v Vanguard Holding Corp., supra, p 98; McLaughlin, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, Pocket Part, CPLR C901:6, pp 39-40).
“The use of a predominance test was not meant to create any rigid criteria in determining whether a class action should proceed but a pragmatic, functional test, with the determination resting in each case upon whether the group is more bound together by a mutual interest in the settlement of common questions than it is divided by individual members’ interest in matters peculiar to them.
“The existence of some common scheme or single plan by which the defendants have acted should be sufficient for the court to find that a class action is appropriate.” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.11; see, also, Friar v Vanguard Holding Corp., supra, p 97.)
The paramount issue is whether directives Nos. 4040 and 4041, and other pronouncements of the DOCS on the grievance program, and the manner of the operation of the grievance program, are in violation of section 139 of the Correction Law, and of constitutional guarantees of due *624 process and petition. No reason exists to have this central issue litigated again and again in numerous separate proceedings. Although some of the problems experienced by individual inmates, while using the grievance process, are not common to all, questions involving its fairness, simplicity and expeditiousness predominate.
For the same reason that this court has found the claims of the proposed class members to be inextricably connected with the entire grievance process, the petitioners, as representatives of the class, have asserted claims which are typical to the class as a whole (CPLR 901, subd a, par 3).
The petitioners have a sufficient interest in the outcomé of the litigation to insure that the class’ interest will be fairly and adequately protected (CPLR 901, subd a, par 4), because their claims are typical of and coextensive with those presented by the entire proposed class. They have retained two competent prisoners’ rights litigation organizations, the qualifications of which have been set forth in the petitioners’ motion papers. This court is personally aware of the high quality of legal representation Leigh Anderson and the Wyoming County-Attica Legal Aid Bureau have provided to inmates in the past, and thus far in this proceeding.
Finally, there is no duplicitous litigation presently pending which was brought by the proposed class members. An action is pending against the respondents in Federal court brought by a group of inmates, including Henry Hoornweg, seeking damages for the alleged illegal transfers of inmate grievance resolution committee members, and an injunction (Ernst v Coughlin, 82 Civ 528 [HGM]). Although testimony has been elicited in the instant proceeding concerning the transfer of Henry Hoornweg, this court does not believe the Federal case is duplicative in any respect, and even if it were, the pendency of that action alone is insufficient to defeat the class status being sought by the petitioners. CPLR 902 allows an order certifying a class action to be altered or amended on motion of the parties or by the court sua sponte, at any time before a decision on the merits. This section sufficiently protects the respondents from having to defend a barrage of lawsuits all dealing *625 with aspects of the present controversy. In addition, certain issues may be severed (CPLR 906, subd 1), or the class may be divided into subclasses (CPLR 906, subd 2).
Accordingly, the petitioners’ motion, pursuant to CPLR article 9, for an order certifying this proceeding as a class action, is granted.

. The respondents initially opposed the motion, but at the time of oral argument they withdrew their opposition. The respondents also stipulated that because Henry Hoornweg was paroled during the pendency of this litigation, and because he had transferred his grievance to Delbert Ode, Delbert Ode is substituted as the grievant. Finally, they agree that they will not challenge Delbert Ode’s standing in this proceeding.

. The Wyoming County-Attica Legal Aid Bureau is prohibited under its funding contracts from applying for or accepting any award of attorneys’ fees.

. Superintendent Smith was ill and Attica Correctional Facility’s Deputy Superintendent Richard Feitz was temporarily serving as acting superintendent.