OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiffs move for a preliminary injunction pursuant to CPLR 6301 to compel the New York City defendants to provide plaintiffs with safe and adequate emergency housing and assistance suitable for families with dependent children and to compel defendants to adopt detailed regulations to assist plaintiffs and other families similarly situated. Plaintiff also seeks to compel the New York State Department of Social Services (State) to provide them with immediate fair hearings to review the denial of emergency shelter. Plaintiffs also seek class certification pursuant to CPLR 902 and to proceed as poor persons. Other specific relief requested by plaintiffs has been disposed of by agreement of the parties or order of this court.
By an interim order dated June 20, 1983, this court ordered that families with children in need of emergency housing or assistance be provided with notice of their rights to emergency housing and the right to an expedited or regular fair hearing in which plaintiffs may contest the agency’s determination. That families granted emergency housing be placed, insofar as possible, in clean facilities which meet New York City fire, health, *24 safety and residential regulation requirements and located in light of the children’s educational needs. The interim order further provided that families shall continue to be provided with emergency housing and assistance until such time as they shall have an opportunity to contest denial of emergency housing and assistance.
The substance of the interim order has since been codified under 18 NYCRR 352.3. To that extent, defendants’ and State’s objection to that order are moot. However, it does not dispose of the principal argument raised by defendants.
Defendants argue that they have no obligation to provide emergency housing for the homeless. This, from the city whose Statue of Liberty welcomed immigrants to these shores, and proudly proclaimed: “Send these, the homeless, tempest-tossed, to me.” Defendants concede that under the Aid to Families with Dependent Children Act (AFDC; 42 USC § 601 et seq.), there is an obligation to assist families to locate shelter for 30 days, and beyond that defendants allege only an obligation to provide homeless families with cash grants.
NY Constitution article XVII provides for aid to the needy and that they shall be provided for by the State or by its subdivisions. This obligation is mandatory and imposes upon the State an affirmative duty to aid the needy (Tucker v Toia, 43 NY2d 1, 8). Neither the Constitution nor Social Services Law §§ Í31,131a, 350 provide that emergency shelter shall be given to the needy in explicit terms.
However, once the defendants have undertaken to provide emergency shelter, whether for 30 days pursuant to AFDC or beyond, instead of providing direct cash grants, the issue becomes whether the shelter provided should meet reasonable minimum standards. By the interim order, this court sought to establish general principles by which the agencies may be guided. These general principles are not immutable nor exhaustive, but indicative of the minimum standards which this society at this time finds acceptable within the meaning of the word shelter. It may well be that in other places and times shelter means or meant literally, a roof over one’s head. In a civilized society a “shelter” which does not meet minimal standards of cleanliness, warmth, space and rudimentary conveniences is no shelter at all. Providing a homeless family with a hotel room — often a cubicle in a crumbling plaster palace, or in rooms infested with vermin, with filthy bedding, children sleeping on the floor for lack of cribs, an entire family sleeping in one bed, exposed electrical wires and rooms soiled by human waste are *25 unacceptable shelter for anyone, and especially families with young children. The equitable powers of this court may be invoked to compel compliance with minimal standards. If convicted criminals have such rights, the homeless who become interim wards of a governmental entity are entitled to no less.
The procedural rights of homeless families must also be assured. Families seeking emergency aid would be granted a specific benefit, such as moving expenses, to have it taken away by the next worker in another income maintenance shelter. This court therefore directed defendants to implement a system to expedite review of determination by the agencies and to resolve problems encountered by the plaintiffs in obtaining public assistance and to maintain aid pending resolution.
These families are in, what has been aptly called, “brutal need.” “It is of little consequence for a child and his family without financial resources and faced with possible starvation, to learn that some 90 days after the request [for a hearing] relief is granted” (Matter of Jones v Berman, 37 NY2d 42, 56). Consonant with the decision in Matter of Jones v Berman (supra), this court directs that the procedures outlined in the interim order be continued and specifically rejects plaintiffs’ detailed requests for procedures to be followed by defendants in protecting plaintiffs’ procedural rights. The expertise, working knowledge and practicalities. involved in establishing procedures are particularly within the experience and competence of the agencies (Matter of Jones v Berman, supra, at p 56).
This court is satisfied that plaintiffs have established the probability of success on the merits, irreparable injury and balancing of equities in their favor. (Paine & Chriscott v Blair House Assoc., 70 AD2d 571). The preliminary injunction is granted and the interim order of June 20, 1983 is made final.
Plaintiffs’ motion to proceed as poor persons is granted without opposition.
Plaintiffs’ motion for class certification is denied. While the proposed class is so numerous that joinder of all members is impracticable, the numerous questions of fact and law are not common to all members. Thus, plaintiffs request not only emergency shelter, but moving expenses, storage fees, removal from one accommodation to another, etc. Where many questions would not be common to the class, certification is inappropriate, and particularly where governmental operations are concerned (see, Williams v Blum, 93 AD2d 755).