OPINION OF THE COURT
Helen Freedman, J.
Petitioners Lamboy and Serrano move by order to show cause pursuant to CPLR articles 9, 30 and 78 seeking, inter alia, (1) certification of this action as a class action; (2) declaratory judgment declaring respondents city and State *566 have failed to insure provision of emergency housing to meet the needs of petitioners (and other similarly situated homeless families with children) as required by 83 ADM-47; (3) a preliminary injunction enjoining respondents from denying or permitting denial of emergency housing to meet the needs of petitioners’ family (and other similarly situated homeless families with children in New York City) for reasons other than those permitted by 83 ADM-47; (4) costs and legal fees.
Petitioner Wilma Acevedo seeks similar relief and permission to intervene in this action pursuant to CPLR 1013.
Petitioners have withdrawn those aspects of their petition which seek to declare that the failure of the city and State to provide emergency housing violates the US Constitution (42 USC § 602 [a] [1], [3]; § 1983; 45 CFR 205.100, 205.120, 206.10) and the NY Constitution (art I, § 11) and confine their challenge to alleged violation of 83 ADM-47, the administrative directive issued by the Commissioner of the New York State Department of Social Services governing emergency placement of homeless families in New York City.
BACKGROUND
The New York City Human Resources Administration (HRA) operates income maintenance centers (IMC) located throughout the city. During regular working hours, homeless families may be placed in emergency shelters through their local IMC. After 5 p.m. or on weekends and holidays, families not otherwise placed are sent to an emergency assistance unit (EAU) which in turn assumes responsibility for referral to emergency shelters. There is one EAU in each borough except Staten Island.
Petitioners Marie Lamboy and Oscar Serrano having been intermittently homeless since 1980, when they were forced out of their apartment by a vacate order, and having spent time with friends and relatives as well as in hotels and other emergency shelter facilities, presented themselves for placement on May 9, 1985. They completed an application seeking shelter for a family of five but the city was unable to find a facility accommodating all five members of the family.[1] Consequently, together with their three children ages 2, 4, and 6, Ms. Lamboy and Mr. Serrano spent three nights at an EAU *567 located at 241 Church Street, New York City, before Honorable Elliot Wilk on May 12,1985 signed an order to show cause in which he granted class-wide relief enjoining denial of placement. That order was vacated on May 13, 1985 by the Honorable Joseph Sullivan on condition that the LamboySerrano family be placed in an emergency facility. After some difficulty, all five members of the family were placed in the Lavenburg Center on May 22, 1985.
The order to show cause for intervening plaintiff Acevedo was signed by Honorable Jawn Sandifer on May 21, 1985, but no stay or injunction was contained therein. Mrs. Acevedo and her six-year-old epileptic son had been denied emergency housing since May 20, 1985 and had spent a night in The Bronx EAU. As had the Lamboy-Serrano family, they had slept on plastic chairs and formica tables under fluorescent lights.
The issue before me is simply whether the failure to provide emergency shelter for the Lamboy-Serrano and Acevedo families, as well as those similarly situated, constitutes a violation of an administrative directive issued by the State (83 ADM-47, issued on Sept. 20, 1983, eff Oct. 1, 1983). The relevant provision states as follows:
"a-Local districts must have procedures in place to ensure that homeless families or persons in imminent danger of becoming homeless can apply for emergency housing whenever such emergency housing is needed.
''b-Emergency housing must either be provided immediately if a homeless person is determined eligible or written notice must be given that no assistance will be provided where a homeless person is determined ineligible. A person who is determined ineligible shall be advised of the right to an expedited hearing.”
Respondents Gross and Burdick oppose the motion for preliminary injunction and class certification and cross-move to dismiss the petition on the ground that McCain v Koch (127 Misc 2d 23 [Sup Ct, NY County 1984, Greenfield, J.]; hereinafter McCain), which raises the same issues, is now on appeal to the Appellate Division. They also state that Justice Greenfield in rejecting applications to intervene in McCain and directing individual CPLR article 78 proceedings did not mean that article 78 proceedings should be used to relitigate the issues in McCain. The city also moves on the ground that the claim as to Ms. Lamboy is moot and that class certification is unneces *568 sary because the interests of similarly situated families are fully protected in McCain, through the doctrine of stare decisis.
The State joins the city in opposing the motion for a preliminary injunction on the ground that the identical issues are being litigated in McCain (supra). The State further claims that preliminary injunctive relief should be denied as against it because it is the city respondents who are the direct providers of services and assistance to the eligible needy.
Inasmuch as both respondents invoke McCain (supra) as a basis for denying the preliminary injunction as well as class certification, a brief review of McCain is warranted.
In March of 1983, 13 or 14 needy families with children, represented by the Legal Aid Society, commenced McCain (supra). The plaintiff there challenged the policies and procedures pursuant to which the city defendants furnished shelter and services to homeless families in New York City. In addition to class certification, petitioners in McCain sought injunctive relief on a variety of issues. Those issues included providing emergency housing to families with children, locating and making available units and/or more suitable units, devising a better system of informing homeless families of services available to them, and improving methods for determining eligibility of homeless families for public assistance benefits. Numerous others persons attempted to intervene in the McCain action. Relief sought was based upon the Social Security Act (42 USC § 601 et seq.), 45 CFR 233.120, US Constitution 14th Amendment, NY Constitution articles I, XVII, Social Services Law § 350-j and 18 NYCRR-Social Services.
On June 20, 1983, Justice Greenfield issued an interim order to the city’s Departments of Social Services and Housing Preservation and Development providing that when facts are disclosed which indicate a need for emergency housing assistance, eligible families must be provided with notice of their rights to emergency housing. If such families are determined ineligible, adequate personal notice with reasons must be. given and they must be notified of a right to expedited review. That order also required that when a family is not denied emergency housing the housing into which the family is placed must meet specified health and safety standards and placement must continue until adequate notice for termination is given. Finally, the order provided that to the extent practicable, DSS should continue food stamps or Medicaid.
*569 Thereafter, 83 ADM-47 was issued codifying the interim order.
On June 22, 1984, Justice Greenfield issued his final order in McCain (supra) in which he denied class certification on the ground that numerous questions of fact and law were not common to all members of the class. He also implied (127 Misc 2d 23, 25, supra) that class certification was "inappropriate, and particularly where governmental operations are concerned.” The interim order was converted to a preliminary injunction. While acknowledging that the NY Constitution imposes an affirmative duty to aid the needy, he rejected plaintiffs’ argument that the NY Constitution and State statutes explicitly required the provision of shelter to all homeless families, noting that "[n]either the Constitution nor the Social Services Law §§ 131, 131-a, 350 provide that emergency shelter shall be given to the needy in explicit terms” (127 Misc 2d, at p 24). Justice Greenfield did not specifically deal with 83 ADM-47 except to indicate that where the defendants have undertaken to provide emergency shelter instead of providing direct cash grants, the issues of minimal standards and procedural rights could be scrutinized under the equity powers of the court. Although it is not clear that Justice Greenfield found a substantial duty to provide emergency shelter, he appears to have rejected the defendants’ position that the State obligation is limited to the provision of cash grants.
Both sides have appealed Justice Greenfield’s decision, and argument in connection with that appeal is scheduled for the September Term.
The Legal Aid Society on behalf of its clients brought an action similar to the one at bar in the United States District Court for the Eastern District. (Canaday v Koch, 608 F Supp 1460.) Judge I. Leo Glasser of the Eastern District transferred venue to the Southern District (598 F Supp 1139). Judge Peter K. Leisure then in a lengthy decision invoked the Federal doctrine of "abstention”. He also discussed the dicta in Judge Glasser’s opinion that it would be prudent to await the McCain appeal and agreed that until the appellate court decided McCain, Federal court action would be inappropriate. He also concluded that the McCain decision was ambiguous with respect to a party’s substantive rights to emergency housing.
Earlier, in May of 1985, another action was brought before the State Supreme Court to intervene in McCain (supra). In that action, Linda James and Ronald Erie Wright sought a *570 preliminary injunction pursuant to CPLR 6312 to enjoin denial of emergency shelter, class certification pursuant to CPLR article 9, and a permanent injunction compelling defendants to provide homeless persons with lawful housing. Again, the constitutional and statutory claims were invoked. Honorable Allen Murray Myers found that the action had been rendered moot in that the proposed intervenors had been housed by the city. He added that even if he could have granted the motion to intervene, he would have denied the motion for a preliminary injunction because the relief sought was part of the relief that Justice Greenfield had already denied and that the issue was currently on appeal.
When this action came before me respondents contended that it was identical to the motion to intervene in the McCain action then pending before Justice Myers and that it should be referred to him. Petitioner indicated that it was a different action but did not object to its being referred. I then referred the matter to Justice Myers for him to determine whether this matter was a companion to the McCain proceeding before him. He immediately rereferred it to me indicating that these were separate actions. In rendering my decision I am therefore mindful of what has already transpired.
Acknowledging that McCain and Canaday (supra) have dealt with rights to emergency housing based on the statutes and Constitutions of the United States and State of New York, petitioners have withdrawn any claims on those grounds and have confined their request for relief to class certification and a preliminary injunction in behalf of families who have been denied emergency shelter for reasons not permitted in 83 ADM-47.
CLASS ACTION CERTIFICATION
Petitioners have moved to certify a class consisting of "all eligible families with children in New York City who have been or will be denied emergency housing by the respondents upon grounds not permitted by 83 ADM-47 and without the written notice required under 83 ADM-47”.
In order to accord class action status, five prerequisites must be satisfied. (CPLR art 9.) They are numerosity, predominance of common questions, typicality of named petitioners’ claims, fair and adequate representation by petitioners, and superiority of the class action format.
The proposed action meets the numerosity requirement *571 of CPLR 901 (a) (1) in that the number of homeless families denied emergency housing, while indeterminate, appears to be substantial.[2] The identity of these people changes as permanent or alternate shelter is found. Joinder of such people is impracticable particularly where the class shall be defined as future emergency assistance unit clients for whom emergency shelter will be denied on grounds not permitted by 83 ADM-47 and without written notice required under 83 ADM-47. (See, Matter of Goodwin v Gleidman, 119 Misc 2d 538, 544 [Sup Ct, NY County 1983]; Matter of Ode v Smith, 118 Misc 2d 617, 622 [Sup Ct, Wyoming County 1983].)
The next requirement, CPLR 901 (a) (2), is that common questions of law and fact predominate over issues affecting individual cases. Respondents argue that different families are denied placement for different reasons and point out that this was the basis on which the various courts involved with McCain (supra) refused class action certification. Indeed Justice Greenfield stated: "[w]hile the proposed class is so numerous that joinder of all members is impracticable, the numerous questions of fact and law are not common to all members. Thus, plaintiffs request not only emergency shelter, but moving expenses, storage fees, removal from one accommodation to another, etc. Where many questions would not be common to the class, certification is inappropriate, and particularly where governmental operations are concerned (see, Williams v Blum, 93 AD2d 755).” (McCain v Koch, 127 Misc 2d 23, 25, supra.)
Petitioners on the other hand claim that, in this case, many of the diverse factors involved in McCain (supra) are not present and that the only question raised here is whether respondents are violating 83 ADM-47 by denying emergency housing to homeless families for reasons other than family ineligibility and/or without written notice of ineligibility based on permissible grounds. They claim that this question is common to all members of the class indicating that it is not disputed that families are denied emergency housing for other than eligibility reasons and that in fact no notice of denial for such reasons could be provided. Thus, petitioners claim that a single issue of law, identical to all petitioners, exists and predominates over any individual matter.
*572 As stated in another decision, under the requirements of CPLR 901 (a) (2), the fundamental issue is whether the group asserting class status is seeking to remedy a common legal grievance. (Friar v Vanguard Holding Corp., 78 AD2d 83, 98 [2d Dept 1980].) Petitioners satisfy this requirement.
Third, CPLR 901 (a) (3) requires that the claims of named petitioners be typical of those of all class members. In this case the claims of all petitioners are identical in that the city respondents, having found them to be eligible, denied the families emergency housing for a period of time and failed to give them written notice containing permissible reasons contrary to Directive 83 ADM-47. Since petitioners’ claims arise from the same practice or course of conduct as the claims of other class members, this requirement is satisfied. (See, Friar v Vanguard Holding Corp., 78 AD2d 83, 99, supra; Matter of Goodwin v Gleidman, 119 Misc 2d 538, 545, supra; Cannon v Equitable Life Assur. Socy., 106 Misc 2d 1060, 1067-1068 [Sup Ct, Queens County 1980], 87 AD2d 403 [2d Dept 1982].)
Petitioners will also fairly and adequately represent the interest of the class as required by CPLR 901 (a) (4). Since all claims are identical, the named petitioners have no special interests which might override the interests of the class (Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985].) Moreover, the Legal Aid Society has extensive experience in litigating cases involving the rights of the poor and can be expected to provide whatever representation is necessary.
Finally, there is the question of whether a class action is superior to other methods of adjudication. (CPLR 901 [a] [5].) Respondents argue that class certification is inappropriate where relief is sought against a governmental agency. The rationale is that the government will protect the rights of future claimants under the doctrine of stare decisis. This court is not unmindful of the fact that this rationale has often led the courts of this State to deny applications for class certification. (Matter of Jones v Berman, 37 NY2d 42; Williams v Blum, 93 AD2d 755 [1st Dept 1983]; Matter of Cohen v D’Elia, 55 AD2d 617 [2d Dept 1976]; Minino v Perales, NYLJ, June 20, 1985, p 7, col 5.) The court has also considered the decisions of Justice Greenfield and Justice Myers in denying class certification to the McCain plaintiffs.
It still, however, remains within the discretion of each court to grant certification in appropriate instances. (Felder v Foster, 71 AD2d 71 [4th Dept 1979]; see also, Matter of Eisenstark v *573 Anker, 64 AD2d 924 [2d Dept 1978]; Doe v Greco, 62 AD2d 498 [3d Dept 1978]; Greklek v Toia, 565 F2d 1259, 1261 [2d Cir 1977], cert denied sub nom. Blum v Toomey, 436 US 962 [1978]; Allen v Blum, 58 NY2d 954; Matter of Fulton v Krauskopf, 127 Misc 2d 20 [Sup Ct, NY County].)
There are various factors which have convinced this court that the doctrine of stare decisis will not adequately resolve the matters here. First, denial of class action status in McCain (127 Misc 2d 23, supra) has created a proliferation of actions in which various aggrieved persons have sought to intervene. It appears that the situation of homeless families has worsened despite Justice Greenfield’s valiant efforts (decision and order in McCain). Second, since the inception of this very proceeding, a number of other individual families have claimed that they were improperly denied shelter and other proceedings have been commenced. Although respondents assert that governmental entities are bound by stare decisis and that any decision as to these petitioners would be binding as to all others similarly situated, it is doubtful that many members of the proposed petitioner class of homeless families with children in New York City have sufficient access to the courts to take advantage of any determination in favor of petitioners.
In addition, the claim of any individual petitioner is likely to become moot during the course of the proceeding as emergency shelter is found for that family. Indeed, the respondent city argues that has occurred in this very proceeding because shelter has been obtained for the families involved. A class action avoids the possibility that important claims raised by petitioners will become moot. (See, Greklek v Toia, supra; Ram v Blum, 533 F Supp 933, 939 [SDNY 1982].)[3]
In sum, class certification assures that claims raised here will be judicially determined, that all potential petitioners and intervenors will be protected and that the resources of the judicial system and all counsel will be efficiently utilized.
In view of the above, the request for class certification is granted. (See generally, Brandon v Chefetz, supra; Friar v *574 Vanguard Holding Corp., 78 AD2d 83, supra; Matter of Eisenstark v Anker, supra; Felder v Foster, supra.)
PRELIMINARY INJUNCTION
The next avenue of inquiry is whether the standards for a preliminary injunction have been met. Petitioners must show a likelihood of success on the merits, irreparable injury, and a balance of equities in their favor. (Albini v Solork Assoc., 37 AD2d 835 [2d Dept 1971]; Tucker v Toia, 54 AD2d 322 [4th Dept 1976].)
An administrative directive of the State Commissioner is a written communication from the State Commissioner to the local social service districts providing directions to be followed in the administration of public assistance and care programs throughout the State. (See, Social Services Law § 20.)
Although respondent Perales claims that 83 ADM-47 does not create any new rights, and claims that it is merely a clarification of the responsibilities of local districts, the plain language of the directive either codifies an existing right to emergency shelter or creates one that did not previously exist. The directive specifically states: "Emergency housing must be provided immediately if a homeless person is determined eligible”.
The directive at issue further provides that "when the individual is determined not to be ineligible, an emergency placement shall be made and other needs met”.
The city does not dispute its obligation to comply with the administrative directive, and indeed could not. Governing State and Federal law require that the local social services district act as the agent of the State and administer the welfare program in conformity with Federal and State requirements. (Social Services Law §§ 17, 20, 34; 42 USC § 602 [a] [1], [3]; 45 CFR 205.100, 205.120.)
The State, of course, also does not dispute the binding nature of the administrative directive. It argues that it should not be the subject of preliminary injunctive relief since the city has the primary obligation to provide the emergency housing assistance which petitioners seek. While the court agrees that the State does not have the primary obligation to provide housing assistance, at this early stage of the case it is not necessary to determine the precise nature of the State’s obligation to provide shelter itself should the city continue to fail to provide the needed shelter.
*575 On the other hand, the State has the obligation to assure compliance with its policies, and the gravamen of the petitioners’ complaint against the State is that it has failed in its law enforcement duty. The State agency must "supervise all social services work, as the same may be administered by any local unit of government and the social services officials thereof’ (Social Services Law § 20 [2] [b].) The Commissioner must "enforce * * * the regulations of the department within the state and in the local governmental units”. (Social Services Law § 34 [3] [e].) And, the State must require "corrective action” when it discovers a failure to comply with valid and binding requirements. (Perez v Lavine, 422 F Supp 1259, 1261 [SDNY 1977]; Alexander v Hill, 549 F Supp 1355, 1359 [WDNC 1982], affd 707 F2d 780 [4th Cir 1983], cert denied sub nom. Syria v Alexander, 464 US 874 [1983]; 45 CFR 205.40 [b] [1] [iv] [which provides that through a quality control system, the State must "take appropriate corrective action on improperly authorized or denied assistance and on the causes of improper actions”]; 206.10 [a] [12].)
It is undisputed that petitioners Lamboy-Serrano and petitioner Acevedo, as well as numerous other families as evidenced by exhibits to the petition, the Canaday brief, and the affirmation of Steven Banks, were not "immediately” provided with shelter. Instead these families remained in the emergency assistance units, often for more than one or two nights, sleeping on formica tables under fluorescent lights with inadequate food or bathing facilities. Although families like the petitioners here present particular problems and are concededly difficult to place, it is also clear that the city has not been able to obtain a sufficient number of units for homeless families to comply with the State’s directive. Petitioners have suggested some sources of shelter units but the court is in no position at this time to evaluate the suitability of those alternatives in this proceeding.
The city seems to claim that under the circumstances it did the best it could for the Lamboy-Serrano and Acevedo families and that it attempted to comply with 83 ADM-47 but failed. The expedited fair hearing decision in the Lamboy-Serrano matter, presumably approved by the State Commissioner, suggests that the city complied with 83 ADM-47. Although there was no dispute at the fair hearing that the family was eligible for housing and was at no time informed that it was ineligible, the fair hearing officer found that it could not be determined under all of the circumstances of this case that *576 the family was denied emergency housing assistance from May 9 through 11 because the family was furnished cots and a crib and given some food at the EAU. The officer noted that the medical condition of the emotionally handicapped child made referral to a family shelter inappropriate and described other problems relating to keeping the entire family together.
Although the court recognizes that this family, because of its size, past history relating to other shelters, and composition was difficult to place, it does not agree that furnishing cots and a crib in an emergency assistance unit constitutes compliance with 83 ADM-47.
For all the reasons above, the standard of likelihood of success on the merits has been met.
With respect to irreparable harm and balancing of equities, there can be little question that sleeping in an emergency assistance unit, with inadequate food and virtually no bathing facilities is harmful. Sleeping on formica counter tops, plastic chairs, or makeshift beach cots, eating nothing but cold sandwiches, and having no provisions for changing soiled clothes, constitute an extremely unhealthy environment, particularly for young children and infants. Indeed, many other courts have recognized the irreparable harm resulting from denial of emergency shelter and have granted preliminary relief. (Callahan v Carey, NYLJ, Dec. 11, 1979, p 10, col 4 [Sup Ct, NY County]; McCain v Koch, 127 Misc 2d 23, supra; Tucker v Toia, 54 AD2d 322, supra.)
As to the request for intervention by petitioner Acevedo, CPLR 1013 provides that "any person may be permitted to intervene in any action * * * when the person’s claim or defense and the main action have a common question of law or fact.” The proposed intervenor Acevedo as well as other proposed intervenors were also denied emergency housing without proper written notice, allegedly in violation of 83 ADM-47. The interests of judicial economy would best be served by the granting of the motion to intervene.
For all of the foregoing reasons, the applications for class certification, a preliminary injunction and intervention are granted.
Parties are directed to settle an order designed to assure compliance with 83 ADM-47.

. Mr. Serrano is disabled as a result of a 1972 mugging incident and the six-year-old child attends special classes for emotionally handicapped children.

. See, City is Forced to Let 43 Homeless Stay the Night in Welfare Offices, New York Times, Apr. 13, 1985, and Perchance to Sleep-Homeless Children Without Shelter in New York City, Coalition for the Homeless, Dec. 1984.

. See also, Braveman, Class Certification in State Court Welfare Litigation: A Request for Procedural Justice, 28 Buffalo L Rev 57 (1979), for an excellent discussion of the need to certify class actions in welfare cases and other cases affecting poor people, as well as a persuasive argument that the principle of stare decisis is often ineffective in protecting the rights of litigants. Pages 67-73 discuss mootness.