*284 OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiffs are homeless families with special medical needs who have been referred to emergency housing consisting of barracks-style mass shelters. Included are families with pregnant women, families with children under six months of age, and families whose members have physical, psychological or medical conditions, allegedly precluding their placement in mass shelters. Plaintiffs seek injunctive and declaratory relief (CPLR arts 30, 63) and class action certification (CPLR art 9), requiring various city and State officials to refer them and those similarly situated to facilities with private accommodations appropriate for their medical needs.
At issue in these proceedings is the enforcement of certain provisions of State Family Shelter Regulations (18 NYCRR part 900) which were promulgated pursuant to provisions of the New York Social Services Law and related statutes.[1] These regulations, effective July 14, 1986, mandate that: (1) families with pregnant women, children under six months of age, or members with certain physical or medical conditions may not be referred to Tier I facilities and must be referred to Tier II facilities or hotel or motel placements regulated pursuant to 18 NYCRR 352.3 (e)-(h); and that (2) families with certain types of medical or physical conditions, particularly communicable diseases, may not be referred to Tier I or Tier II facilities.[2]
*285 Tier I facilities are barracks-style shelters for 10 or more homeless families providing open area sleeping areas, meals and some services. Tier II facilities are congregate shelters with private sleeping accommodations for individual families, meals and additional services. (18 NYCRR 900.2 [b].)
Plaintiffs also seek enforcement and application of the numerous administrative "Fair Hearing” decisions which have interpreted Administrative Directive 83 ADM-47 to prohibit referral of families with special medical problems and needs to mass shelters. These decisions all contain directives requiring the city defendants to apply the principles of the decision to all similarly situated families pursuant to 18 NYCRR 358.21.
Plaintiffs originally commenced this action by order to show cause, seeking (1) certification of the class of all homeless families with pregnant women, children under six months of age, or children or adults with physical, psychological or other medical conditions that have been or will be referred by the city to barracks-style mass shelters; and (2) a preliminary injunction against the city and State, enjoining such referrals. The verified complaint, accompanying the order to show cause, seeks, in addition, permanent declaratory and injunctive relief as well as damages, costs and attorneys’ fees.
On October 3, 1986, this court issued an order preliminarily enjoining the city defendants, pending the final determination of this action, from referring homeless families containing a pregnant woman or infants six months of age or younger to any barracks-style mass shelters and ordering the State defendants to monitor and take corrective action, pending final determination, to ensure the city defendants’ compliance with the terms of the order. On November 18, 1986, plaintiffs moved to hold the city and State defendants in contempt, citing, inter alla, failure to comply with this court’s order of October 3. The court issued a subsequent interim order on November 26, 1986, preliminarily enjoining the city defen *286 dants from placing homeless families consisting of pregnant women and/or children six months of age or younger in barracks-style mass shelters in accordance with the court’s order of October 3, 1986. A simultaneous motion by the city defendants to reargue the court’s October 3, 1986 order on the grounds of temporary infeasibility on the part of the city to comply with its terms was denied.
BACKGROUND
The New York City Human Resources Administration (City) provides emergency housing to homeless families in privately owned hotels and motels, apartment-style "family centers” and congregate shelters with private sleeping accommodations (Tier II facilities still under construction), and barracks-style mass shelters without private sleeping accommodations (Tier I facilities).
There are six Tier I mass shelters operating in the Boroughs of Manhattan, Brooklyn and The Bronx. At the Forbell and Clemente mass shelters, more than 100 men, women and children sleep together on beds lined up in rows in large open rooms, and, as in all the Tier I shelters, families must use group sanitary facilities. There have been a number of occasions the city has been required to quarantine residents in Tier I shelters to insure containment of measles, chickenpox and other contagious diseases.
Plaintiffs Deborah and Andre Griffith and David Gregory were placed with their three-month-old infants at the 151st Street mass shelter in The Bronx for a period of approximately one month. Both infants contracted severe diarrhea during this period. Plaintiff Channelle Jordan, age two, suffers from congenital cytomegalic inclusion disease, which has left her unable to hear, speak or walk. She and her parents were referred to and remained for over one month in the Forbell Shelter, a Tier I shelter, until this action was commenced. She was unable to receive her regular physical therapy and suffered an ear infection and asthma attacks. Plaintiff Karen Slade was six weeks pregnant when she requested relocation from the 151st Street facility, another mass shelter, in early August 1986. Despite being informed that Ms. Slade had developed serious health problems including diarrhea, weakness, dehydration and metabolic alkalosis in late August, the City failed to relocate her, and she subsequently suffered a miscarriage, unattended, on the floor of the communal bath *287 room. Plaintiffs Denise Rosa, in her seventh month of pregnancy, and Marlene Smith, in her sixth month, were referred to Tier I mass shelters, where they remained until after the commencement of this lawsuit.
ISSUES PRESENTED
The issue before the court is whether the referral of the Gregory, Griffith, Slade, Rosa and Smith families, as well as those similarly situated, constitutes a violation of State Family Shelter Regulation 18 NYCRR 900.6 (quoted in n 2); State Administrative Directive 83 ADM-47; the New York State Social Services Law; and the Social Security Act.[3]
The city defendants oppose the motion for class certification and injunctive relief on the grounds (1) that class certification is unnecessary because the interests of similarly situated families are protected by a City policy not to refer homeless families with young infants and pregnant women to Tier I mass shelters; and (2) that occasional temporary infeasibility would simply make it impossible in every instance for the City to refrain from referring the subject families to congregate shelters.
The State joins the City in opposing the action on various grounds, asserting that the interests of homeless families with special medical needs are protected by State fair hearing decisions as well as 18 NYCRR part 900. The State further claims that injunctive relief should be denied as against it because it is the city defendants who are the direct providers of services and assistance to the eligible needy.
The court is convinced that hearings are necessary to determine how families with "physical, psychological or other medical conditions” precluding their placement in mass shelters should be defined and whether that group, once defined, should be granted class certification. The parties have agreed *288 to conduct limited discovery on these issues;[4] and, therefore, decision, on them is reserved following discovery and trial. This decision, like the interim orders issued on October 3, 1986 and November 26, 1986, deals solely with the issues of class certification and injunctive relief for homeless families containing pregnant women and/or children under six months of age.
CLASS ACTION CERTIFICATION
Plaintiffs seek to certify a class consisting of all homeless families with pregnant women and/or children under six months of age that have been or will be referred by the City to barracks-style mass shelters (Tier I facilities) in violation of 18 NYCRR 900.6 and 83 ADM-47.
Accordingly, for the reasons stated by this court in Matter of Lamboy v Gross (129 Misc 2d 564 [1985]) class certification assures that claims raised here will be judicially determined, that all potential plaintiffs and intervenors will be protected, and that the resources of the judicial system and all counsel will be efficiently utilized. In view of the above, the request for class certification is granted. (See generally, Matter of Lamboy v Gross, supra; Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985]; Friar v Vanguard Holding Corp., 78 AD2d 83 [2d Dept 1980]; Matter of Eisenstark v Anker, 64 AD2d 924 [2d Dept 1978]; Felder v Foster, 71 AD2d 71 [4th Dept 1979].)[5]
INJUNCTIVE AND DECLARATORY RELIEF
The next avenue of inquiry is whether the standards for injunctive and declaratory relief have been met. For a preliminary injunction to be issued, petitioners must show a likelihood of success on the merits, irreparable injury and a balancing of equities. (Albini v Solork Assocs., 37 AD2d 835 [2d Dept 1971]; Tucker v Toia, 54 AD2d 322 [4th Dept 1976].)
*289 Under Social Services Law §§ 11, 17, 20, 34, the State Department of Social Services is charged with supervising all social welfare programs in the State. As Commissioner of Social Services, the State exercises general supervision over the work of all local social services districts. Each social services district is responsible for directly providing public assistance and care for eligible families who reside in its territory. New York City is a social services district within the meaning of Social Services Law § 56. Pursuant to this authority, the State issues administrative directives and holds administrative hearings to determine compliance with its orders and regulations.
Numerous administrative hearing decisions interpreting 83 ADM-47 have directed that families with young infants, pregnant women or otherwise medically vulnerable members be removed from mass shelters and given appropriate placements. These decisions have explicitly found mass shelters to be "inappropriate”, "unstable” or "unsuitable” and therefore inconsistent with the letter and spirit of 83 ADM-47. That directive specifically provides that the agency (Social Services Department) must ensure that homeless persons or those in imminent danger of becoming homeless can apply for emergency housing. These provisions have been interpreted to require that these emergency placements be as brief as possible and minimize dislocation from a person’s community and disruption to the client’s life caused by such dislocation. (See, Matter of Smith.)[6]
The decisions also contain a specific directive, which states: "In accordance with the provisions of the regulations of the State Department Social Services, if this decision indicates that the Social Services official has misapplied provisions of the law, department regulation or such official's own state approved policy, the social services official is required to review other cases with similar facts for conformity with the principles and findings in the decision.”[7]
In actuality, the provisions of the Family Shelter Regulations at issue here (18 NYCRR 900.6 et seq., cited in n 2) merely codified the directives contained in the administrative hearing decisions, requiring that pregnant women and infants as well as persons with medical and physical problems not be housed in Tier I facilities. Although 18 NYCCRR 900.6 pro *290 vides that the first two groups may be housed in Tier II when such became available, until that occurs, such families must be housed in hotels and motels. The argument of both respondents that there was a phase-in period of six months from July 14, 1986 to January 14, 1987 is not persuasive and was implicitly rejected by this court when the interim orders were issued. The phase-in refers to construction of Tier II and private accommodation facilities, not the housing of medically vulnerable. families. In any event, six months has already passed and that issue is now moot.
The court notes that except for seeking relief from the strictures of the directives and regulations based on "temporary infeasibility”, the City does not dispute that it is required to provide Tier II or private accommodations for pregnant women and young infants. It also acknowledges that certain physical and medical conditions warrant private accommodations but resists the court’s attempt to determine which conditions fall within the ambit of 18 NYCRR 900.6 (d) or to impose its own standards. (See, McCain v Koch, 117 AD2d 198 [1st Dept 1986], supra.) At one point, the City asked for permission to relocate families without medically vulnerable members, who were housed in private hotel or motel facilities, to mass shelters to make room for the others. This request was made in connection with the exception sought for temporary infeasibility and was denied. In view of all of the administrative and statutory mandates discussed above, there is no question that plaintiffs must win on the merits.
The unfortunate plight befalling each of the named plaintiffs demonstrates that placement of tiny babies and pregnant mothers in mass shelters will cause irreparable harm. The City also does not dispute the importance of private accommodations placement for such families. Thus, there is no balancing of equities necessary. Indeed, may other courts have recognized the irreparable harm from denial of appropriate emergency shelter and have granted preliminary relief. (Callahan v Carey, NYLJ, Dec. 11, 1979, at 10, col 4 [Sup Ct, NY County]; McCain v Koch, supra; Tucker v Toia, supra; see also, this court’s decision in Matter of Lamboy v Gross, supra.) For all of the foregoing reasons, plaintiffs are entitled to preliminary injunctive relief as against the city defendants Koch, The New York City Human Resources Administration, Grinker, Kaladjian, et al.
With respect to the State defendants, the situation is less clear. Under Social Services Law § 17 (a); § 20 (2) (b); § 34, the *291 State agency must "supervise all social services work, as the same may be administered by any local unit of government and the social services officials thereof’. Moreover, the Commissioner must "enforce * * * the regulations of the department within the state and in the local governmental units” (Social Services Law § 34 [3] [e]). The State must also require "corrective action” when it discovers a failure to comply with valid and binding requirements. (Bailey v Blum, 96 Misc 2d 211 [Sup Ct, Orange County 1978]; Perez v Lavine, 422 F Supp 1259, 1261 [SD NY 1977]; 45 CFR 205.40 [b] [1] [iv] [which provides, that through a quality control system, the State must "take appropriate corrective action in unproperly authorized or denied assistance and on the causes of improper actions”]; 45 CFR 206.10 [a] [12]; Alexander v Hill, 549 F Supp 1355, 1356, 1361 [WD NC 1982], affd 707 F2d 780 [4th Cir 1983], cert denied sub nom. Syria v Alexander, 464 US 874 [1983].) Based on the foregoing factors, this court issued a preliminary injunction against the State defendants in Matter of Lamboy v Gross (129 Misc 2d 564, supra) involving compliance with 83 ADM-47.
However, since the issuance of the Lamboy decision (supra), the First Department specifically denied injunctive relief against the State in Matter of Fulton v Krauskopf (117 AD2d 198 [1st Dept 1986]; see, McCain v Koch, supra). That court said: "Social Services Law § 62 places primary responsibility upon the local social services agencies for the delivery of services and assistance to needy families * * * The State DSS, in contrast, is responsible for supervision and reimbursement for the various State-funded programs of public assistance. Only the City DSS is the relevant party here, because it alone is accountable for the direct payment of actual transportation expenses incurred by or for relocation of homeless families” (at 219-220).
Notwithstanding the fact that it is the failure to comply with State directives that is involved, this court is constrained by the decision in McCain (supra) to deny injunctive relief as against the State defendants.
Although plaintiffs have moved by order to show cause for class certification and a preliminary injunction, the complaint, as described, also seeks declaratory and permanent injunctive relief. There remain no disputed issues of fact regarding the aspect of the case relating to homeless families with pregnant *292 women and children under six months of age. Therefore, the court, in addition, grants plaintiffs declaratory judgment and permanently enjoins the city defendants from referring the class of homeless families with pregnant women and children under six months of age to Tier I shelters.
All other relief sought in this proceeding is held in abeyance pending the outcome of an evidentiary hearing.
[Portions of opinion omitted for purposes of publication.]

. Social Services Law §§ 20, 344 (3); § 350 (7); 83 ADM-47; 42 USC § 601 et seq. (Social Security Act).

. 18 NYCRR 900.6
"(d) The only shelter for families to which a family including a pregnant woman or an infant under six months old may be referred by a local social services district is a tier II facility, unless such family requests placement in a hotel or motel regulated pursuant to section 352.3 (e) through (h) of this Title and such a placement is available in which case the family may be referred to a hotel or motel, in the sole discretion of the district.
"(e) The only shelter for families to which a family including a member having a medical, physical or other special need which cannot be adequately served in a tier I facility may be referred is a tier II facility, unless such family requests placement in a hotel or motel regulated pursuant to section 352.3 (e) through (h) of this Title and such a placement is available in which case the family may be referred to a hotel or motel, in the sole discretion of the district.
"(f) A district shall not refer to a tier I or tier II facility a family containing a member who:
"(1) has a mental or physical condition that makes such placement inappropriate or otherwise may cause danger to him/herself or others;
*285 (2) is likely to substantially interfere with the health, safety, welfare or care of other residents;
"(3) is in need of a level of medical, mental health, nursing care or other assistance that cannot be rendered safely and effectively by the facility, or that cannot be reasonably provided by the facility through the assistance of other community resources; or
"(4) has a generalized systemic communicable disease or a readily communicable local infection which cannot be properly isolated and quarantined in the facility.”

. There is no dispute that the New York State Social Services Law vests the State with responsibility to determine policies for public assistance programs and requires local social services districts to abide by State directives and policies in this area. (Social Services Law §§ 17, 20, 22 [9] [a]; § 34.) Likewise, the Federal Social Security Act and regulations promulgated thereunder mandate the State’s administration of and the city’s compliance with State directives for all public assistance programs funded in part or in whole by Federal funding programs. (42 USC § 601 et seq.; 45 CFR 205.100 [b] [3].) The only disputed issue is whether the city has failed to comply with State directives and regulations, prohibiting referral of homeless families with pregnant women and infants under six months of age to congregate style mass shelters.

. Following a motion by the city defendants for a protective order against a notice of discovery and inspection issued by plaintiffs, this court issued two orders on January 20, 1987 and January 28, 1987 limiting plaintiffs’ document requests in certain respects.

. Since the date that the decision in this case was released, the Appellate Division, First Department, has affirmed the decision in Matter of Lamboy v Gross (126 AD2d 265). See also, Braveman, Class Certification in State Court Welfare Litigation: A Request for Procedural Justice, 28 Buffalo L Rev 57 for an excellent discussion of the need to certify class actions in welfare cases and other cases affecting poor people, as well as a persuasive argument that the principle of stare decisis is often ineffective in protecting the rights of litigants. (Id., at 67-73, discusses mootness.)

. E.g., Matter of Smith, Sept. 15, 1986, involving a family with a pregnant woman.

. 18 NYCRR 358.21, 358.23.