OPINION OF THE COURT
Joseph S. Levine, J.
The efforts of the city and State to feed the hungry and to shelter the homeless have been the subject of much controversy. This case challenges the sufficiency of those efforts and whether or not the governmental authorities are meeting their constitutional and statutory obligations to provide for the indigent.
The petitioner and petitioner-intervenor are recipients of public assistance. The respondents are those public officials charged with the duty of implementing and administering the statutes and regulations which govern the right of a person to receive public assistance. This proceeding was commenced pursuant to CPLR articles 9 and 78. The petition requests certification as a class action. The petition seeks an order granting, inter alia, the following substantive relief; enjoining the Commissioner of the New York City Department of Social Services from refusing to provide preinvestigation grants to *651 applicants for public assistance who need immediate help; compelling the Commissioner of the New York State Department of Social Services to require the city to provide preinvestigation grants; compelling the State Department of Social Services to amend an administrative directive that purports to establish standards and procedures for the issuance of preinvestigation grants.
FACTS
The petitioner is Ms. Alfreida Davis and she lives in Brooklyn with her two minor children. She has been a recipient of public assistance since December 29, 1984. The assistance took the form of a grant from the Aid to Dependent Children program (ADC). Ms. Davis first requested assistance on October 19, 1984 when she appeared at the Fort Greene Income Maintenance Center to apply for ADC benefits for herself and her family. The period between October 19 and December 29 is at issue here.
Ms. Davis went to the Fort Greene Income Maintenance Center on October 19, 1984 after her unemployment insurance benefits had expired. She had no money to feed her children or to pay the rent. The caseworker at the Center told her to return in five days with certain documents. Ms. Davis was not told of the availability of preinvestigation grants or of expedited food stamps.
A brief hospitalization delayed Ms. Davis from returning to the Center until October 26, 1984. She had with her the requested documents but was told to return to the Center with more documents November 7. Ms. Davis returned on that date only to be told that more documents were needed and to come back within five days. She returned on November 13, 1984 with the documents and her application was finally deemed to be complete.
From November 14, 1984 through December 17, 1984, Ms. Davis received no further communication from the Income Maintenance Center. She had fallen behind in her rent. She relied on the charity of neighbors to feed herself and her children. On December 17, Ms. Davis was provided with assistance to pay her rent arrears. On December 29, Ms. Davis was given food stamps. This grant was prospective and did not include a payment for the period between October 19 and December 29. As a result of administrative appeals to the State Department of Social Services, the city was ordered to *652 provide cash assistance and food stamps retroactive to November 13, 1984, the date the application was deemed to have been complete. The State’s action failed to address Ms. Davis’ entitlement to a preinvestigation grant or to a retroactive payment to the date of application.
The petitioner-intervenor, Bobby Jarrell, lives in Brooklyn. On or about November 7, 1985 Mr. Jarrell applied for a grant of assistance in the form of food stamps and Home Relief (HR) from the Jay Street Income Maintenance Center. Mr. Jarrell informed the worker at the Center that he had just been released from prison and was without money for food. Despite his immediate need and despite the worker’s finding that Mr. Jarrell was eligible for emergency expedited food stamps, the stamps were not made available to him until November 12, 1985. Mr. Jarrell was not advised of the availability of a preinvestigation grant. When Mr. Jarrell appeared at the appropriate office to obtain his food stamps he was told that the city agency had failed to process the necessary papers and must wait until the next day for his food stamps. November 13 came and went and it was not until the 14th that Mr. Jarrell received the food stamps. An order of Mr. Justice Monteleone of this court was necessary before the city provided Mr. Jarrell with a preinvestigation grant of Home Relief and food stamps.
The respondent City Department of Social Services disputed some of the facts alleged by the petitioner and petitionerintervenor. Nevertheless, the papers. submitted by the petitioners convince the court that their version of the facts is the accurate one.
LAW
The city and State spend large sums of money to provide for the indigent. The amounts spent are matters of some political moment because there is a body of thought that believes too much is being spent as it is. However, neither of these realities should obscure the fact that the Constitution of the State of New York and statutes enacted pursuant to it make each New Yorker the beneficiary of a right not to be hungry, unclothed, or homeless. To the extent that residents of the State are hungry, unclothed, or homeless, then the governmental authorities are falling short of their obligations. Article XVII of the NY Constitution provides:
"§ 1. [Aid, care, and support of needy persons]
*653 "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” (Emphasis supplied.)
Social Services Law § 133 provides: "If it shall appear that a person is in immediate need, temporary assistance or care shall be granted pending completion of an investigation.” (Emphasis supplied.)
Needless to say, there are also applicable Federal statutes. Title IV-A of the Social Security Act (42 USC § 601 et seq.) establishes the Aid to Families with Dependent Children (AFDC) program to provide assistance to needy children and their parents or other caretaker relatives in families in which at least one parent is absent, disabled or unemployed.
The Social Security Act allows reimbursement to the States whose plans for participation in the AFDC program meet Federal requirements. Moreover, the Act allows a State to provide emergency assistance to needy families with children. If the State provides such relief, then it must provide that the emergency assistance will be available immediately upon application (42 USC § 602 [a]; 45 CFR 233.120 [a] [5]).
The State of New York implemented its participation in the AFDC program in title 10 of the Social Services Law which established the Aid to Dependent Children program. The emergency assistance program in New York is created in section 350-j of the Social Services Law, as modified by Blum v Bacon (457 US 132 [1982]), and implemented by 18 NYCRR part 372. It provides assistance to a family with a needy child under 21. It is designed to meet urgent needs resulting from a sudden occurrence which leaves the child without resources to meet his or her immediate needs.
The Home Relief program is established in the State by title 3 of the Social Services Law. It is designed to provide financial assistance to all persons in New York who are unable to provide for themselves and who are not receiving assistance from any other source. Unlike ADC and the Emergency Assistance to Families program, HR is not subject to Federal regulation. However, section 133 of the Social Services Law applies to HR and, as we have seen, it requires the granting of temporary assistance pending the completion of an investigation of a case involving immediate need.
Because this case involves the issue of the date payment of benefits is to commence, it should be noted that the proce *654 dures governing an application for AFDC benefits and by extension, State ADC benefits can be given from the date of application. (42 USC § 602 [a].)
The existence of immediate help in the form of preinvestigation grants is worthless without adequate notice. State rules and regulations require that applicants be provided with information and assistance concerning applicable programs, eligibility requirements, and available benefits. (18 NYCRR 351.1 [b].) And while food stamps are to be provided no later than five days after the date of application, procedures promulgated by the City Department of Social Services require the city to provide a cash grant for the period until food stamps can be issued. (Procedures Manual, Food Stamps F-2.)
On March 3, 1986, the Commissioner of the New York State Department of Social Services issued an administrative directive (86 ADM-7). It purports to answer the objections raised by the petition as to the implementation of aid programs.
ANALYSIS
I. Class Action
The court believes that certification as a class action is a proper means of litigating the issues in this case. The argument advanced by the respondents is the individual circumstances of each applicant’s "immediate need” predominate over the common questions of law and fact. The argument is unpersuasive. Each applicant for such public assistance shares a common need to be told that help is available. Whatever path leads to the door of an Income Maintenance Center, the request is the same — for help to meet the immediate need for food and shelter. The petitioners are seeking relief that is common to all class members, i.e., adequate notice to all applicants of the availability of preinvestigation grants and uniformly computed cash preinvestigation grants to all class members. It is precisely the delays, the lack of notice, and the failure to reimburse back to the date of application that are common to all such emergency applications that are being challenged by the petitioners. The court is advised that there may be as many as 4,800 applicants per month similarly situated. The attorneys for these petitioners are well versed in class actions (indeed, the papers submitted to the court by the petitioners’ attorney are models of clarity and legal advocacy), and the quality of representation afforded members of the class is excellent. *655 The respondents also oppose class certification because it is redundant in light of the stare decisis effect of a judgment. (See, Matter of Rivera v Trimarco, 36 NY2d 747 [1975]; Gonzalez v Blum, 96 AD2d 1091 [2d Dept 1983].) The argument is rejected. It is ironic that the Gonzalez case resulted in a judgment holding that public assistance applicants were entitled to notice of the availability of preinvestigation grants under circumstances similar to those present here. Therefore, this proceeding results from the respondent’s failure to comply with the order of the court in Gonzalez. The utility of stare decisis is limited if this same issue will always be relitigated.
Because of the demonstrated marginal effect of stare decisis on the respondents, the court believes that this case fits within that line of cases providing exception to Rivera (supra). In Allen v Blum (58 NY2d 954, 956 [1978]), the Court of Appeals ruled that where an action “seeks review of a continuing policy, a declaratory judgment class action rather than individual article 78 proceedings is proper”. A history of not following judicial directions is also a reason to certify. (Matter of Ode v Smith, 118 Misc 2d 617 [Wyo County 1983].) Finally, certification of a class action is preferable to the stare decisis effect of an individual judgment where the members of the putative class are not likely to seek help or gain access to the courts because of socioeconomic factors. (See, Matter of Goodwin v Gleidman, 119 Misc 2d 538 [Sup Ct, NY County 1983].) These factors are met by the allegations contained in the petition.
Therefore, and for the foregoing reasons, including the number of members of the class, this case shall proceed as a class action. Because of the injunctive nature of the relief, there is no need to order notification of the class. (CPLR 904.)
II. Notification of the Availability of Preinvestigation Grants
The directive 86 ADM-7 is designed to implement the obligations of the authorities to provide for the indigent while their applications are being processed. The lengthy directive provides in pertinent part:
“Local districts are required to respond to an applicant’s declaration of an emergency situation at the time of application for public assistance and to provide notification of local agency determinations regarding the meeting of immediate needs. The handling of emergency situations requires the use of discretion and judgment on the part of local districts * * *
*656 "For the purposes of this directive, an emergency situation is a set of circumstances that often will require some action before the determination of eligibility for ongoing public assistance is complete. Immediate needs are those needs resulting from an emergency situation that must be met that same day to ensure the health and safety of individuals * * *
"Local social services districts must take the following actions whenever an applicant for public assistance declares that an emergency situation exists * * *
"1. Provision of Emergency Interview.
"When applicants for public assistance indicate either verbally during the application process or in writing on the application, that they have one or more emergency situations, they must be interviewed the same day.
"Local social services districts are reminded that they have an affirmative responsibility to ascertain whether an emergency situation exists, even in situations where the client has difficulty articulating his/her problem.
"For the purposes of this directive, an emergency situation is considered to exist when applicants state they are in one or more of the specific situations listed below:
" — they have no food
" — they have no shelter
" — they have an eviction or a dispossess notice
" — they have no fuel for heating during the cold weather periods
" — they have a utility disconnect notice and are scheduled for shut-off within 72 hours or their utilities have already been disconnected
" — they are without items necessary for the health and safety of individuals (this would be determined on a case by case basis, for example, a necessary home repair, such as a broken water pipe).
"If any of the above conditions are asserted, an immediate review must be provided.”
The directive goes on to state that a determination of no emergency situation must be accompanied by a written notification to that effect. The facts of this proceeding indicate that even when an immediate need is claimed, help is not forthcoming. Moreover, the directive presumes a prior knowledge of an applicant’s right to assistance, at least to a degree that might not be founded on the facts. The Supreme Court of the *657 United States has long recognized that persons in need of public assistance are often less able to cope with the intimidating demands of a welfare-office bureaucracy. In Mennonite Bd. of Missions v Adams (462 US 791, 799 [1983]) the court stated, "particularly extensive efforts to provide notice may often be required when the State is aware of a party’s inexperience or incompetence.”
It is clear to this court that more is required of the city and State than is provided in 86 ADM-7. As 18 NYCRR 351.1 (b) provides:
"(b) Responsibility for furnishing information. The social services official shall:
"(1) provide applicants and recipients, and others who may inquire, with clear and detailed information concerning programs of public assistance, eligibility requirements therefor, methods of investigation and benefits available under such programs”.
To meet their obligations the respondents must provide each applicant with a form explaining his or her right to emergency assistance and require the applicant to sign a statement to the effect that they are not in immediate need. 86 ADM-7 violates article XVII of the NY Constitution, Social Services Law § 133 and 18 NYCRR 351.1 (b), to the extent that it does not provide an adequate means of meeting its "affirmative responsibility” of notifying applicants of their rights.
III. Issuance of Preinvestigation Grants from the Date of Application
The fact that the Constitution of the State of New York establishes a proprietary right to public assistance renders the refusal of the respondents to issue grants from the date of application an abuse of discretion per se, and a violation of the petitioner class’s rights pursuant to 42 USC § 602, 45 CFR 206.10 (c) (6) (i) and article XVII of the NY Constitution. A right to assistance does not arise when an application is complete. The need preexists the paperwork. The need is a right. Therefore, the respondent Perales’ decision after fair hearing in the appeal of Alfreida Davis dated February 26, 1985 is arbitrary and capricious, an abuse of discretion and a violation of article XVII of the NY Constitution, 42 USC § 602, 45 CFR 206.10 (c) (6) (i) and Social Services Law § 133 in that it fails to direct the city to provide Ms. Davis with a preinvestigation grant, or with ADC assistance retroactive to the date *658 of application. The same result applies to the petitioner intervenor Jarrell.
IV. Derogation of Responsibility
Although not argued by the petitioners, the court’s review of 86 ADM-7 reveals another defect of constitutional significance.
Section IV (A) (4) provides in pertinent part: "Community resources, including friends and relatives, which are actually available must be used before an immediate need can be met by the local district. Local districts must not provide assistance to applicants who refuse to utilize such resources.”
The court believes this section is an improper derogation of the government’s responsibility to provide for the needy. Neither the Legislature nor the Departments of Social Services may shirk their responsibility or in any way delegate their obligation to aid, care and support the needy. (See, Tucker v Toia, 43 NY2d 1 [1977]; Matter of Lee v Smith, 87 Misc 2d 1018 [Sup Ct, NY County 1976].)
The charitable work of the various volunteer agencies is laudable but the State or city cannot require any applicant for public assistance to have a relative, friend, or local food pantry satisfy an obligation of the State and city. This provision of 86 ADM-7 is invalid and in violation of article XVII of the NY Constitution and section 133 of the Social Services Law. (See, Gonzalez v Blum, 127 Misc 2d 558 [Sup Ct, Westchester County].) The private charities may supplement the assistance provided by the governmental authorities, but they may not supplant them.
FINDINGS
Based upon the foregoing, it is the court’s opinion that the respondents stand liable to the petitioners and members of their class in the following ways:
1. The respondent, Commissioner of the New York City Department of Social Services, failed to provide preinvestigation grants to applicants for public assistance who are in immediate need and that failure violates the petitioners’ rights under article XVII of the NY Constitution, Social Services Law § 133 and 18 NYCRR 382.1 et seq. The refusal to provide assistance as of the date of application and to take a more active role in advising applicants of their rights is improper.
*659 2. The respondent, Commissioner of the New York City Department of Social Services, did not adequately notify applicants for public assistance of the availability of a preinvestigation grant and such failure is violative of the petitioners’ class rights pursuant to article XVII of the NY Constitution, Social Services Law § 133 and 18 NYCRR 351.1 (b).
3. The respondent, Commissioner of the New York State Department of Social Services, failed to adequately direct the city Social Services officials to give all public assistance applicants notice of the availability of preinvestigation grants and to provide preinvestigation grants from the date of application to all applicants for ADC benefits who are in immediate need. This failure is arbitrary, capricious, an abuse of discretion and a violation of the rights of the petitioner class pursuant to article XVII of the NY Constitution, 42 USC § 602, 45 CFR 206.10 (c) (6) (i) and Social Services Law § 133.
4. The respondent, Commissioner of the New York State Department of Social Services, acted in an arbitrary and capricious manner, abused his discretion and violated article XVII of the NY Constitution, 42 USC § 602, 45 CFR 206.10 (c) (b) (i) and Social Services Law § 133 in failing to direct the city agency to provide Ms. Davis with a preinvestigation grant or with ADC assistance retroactive to the date of application.
5. The respondent, the Commissioner of the City Department of Social Services, failed to provide Mr. Jarrell a preinvestigation grant and that failure was an abuse of discretion and contrary to article XVII of the NY Constitution and Social Services Law § 133.
REMEDIES
The Commissioner of the State Department of Social Services is ordered to reverse so much of his decision after fair hearing dated February 26, 1985 as failed to direct the city agency to provide a preinvestigation grant of assistance retroactive to the date of application to the petitioner Alfreida Davis. The respondents are ordered to issue benefits retroactive to October 19, 1984 to Ms. Davis and retroactive to November 7, 1985 to Mr. Jarrell.
The Commissioner of the City Department of Social Services is ordered to give all public assistance applicants notice of the availability of preinvestigation grants. Said notice is to be in writing together with a statement signed by the applicant attesting to his or her understanding of those rights. The *660 Commissioner is to provide benefits as of the date of application.
The Commissioner of the State Department of Social Services is ordered to amend administrative directive 86 ADM-7 to comport with this decision in the following respects: (1) to give public assistance applicants notice of the availability of preinvestigation grants in writing; (2) to provide preinvestigation grants in conformity with law; (3) to provide assistance as of the date of application for benefits; and (4) to strike those portions of the directive that require recourse to private sources of food and assistance.
The petitioners’ attorneys’ fees are awarded pursuant to CPLR 909 and 42 USC § 1988. The attorneys are ordered to present to the court proof of said fees within 30 days of this order.