OPINION OF THE COURT
Herbert A. Posner, J.
In this CPLR article 78 proceeding, petitioner Robert Pas-tore an applicant for Medicaid seeks declaratory and injunctive relief arising out of respondents’ failure to issue temporary medical assistance to meet his immediate medical needs during the pendency of his Medicaid application. In separate motions by way of orders to show cause Marion and Charles Timmes on behalf of themselves and their granddaughter Lisa Cannalonga, and Belva Frank on behalf of herself and her husband Kenneth Frank, seek leave to intervene as petitioners in this proceeding, and further seek the identical injunctive and declaratory relief. Respondent Barbara J. Sabol, as Commissioner of the New York City Department of Social Services (hereinafter City agency), cross-moves for an order dismissing the Franks’ petition on the ground that it is moot and fails to state a cause of action. Petitioner and the intervenors also request that Michael Dowling, as Commissioner of *986 the New York State Department of Social Services (hereinafter State agency), be substituted for the Acting Commissioner Gregory Kaladjian.
At the outset, the motions to intervene by Marion and Charles Timmes, and Belva and Kenneth Frank are granted. These individuals are all Medicaid applicants and their petitions essentially state the same legal and factual allegations as Mr. Pastore concerning respondents’ policy of not providing preinvestigative grants of medical assistance while an application for Medicaid is pending. The proposed intervenors, thus, have a real and substantial interest in the outcome of the within action, and need not separately litigate these issues. (CPLR 1013.) Marion and Charles Timmes have withdrawn only that portion of their petition which concerns their granddaughter Lisa Cannalonga, as her status as a Medicaid recipient has been restored by respondents. Contrary to respondents’ assertions, Marion and Charles Timmes have not withdrawn their own claims, and these claims were not resolved in any other proceeding before the court. (See, Matter of Cannalonga v Kaladjian, Dec. 20, 1993, Dunkin, J., index No. 15409/ 93.) Michael Dowling has succeeded Mr. Kaladjian as Commissioner of the State agency. Petitioner’s and the intervenors’ request to substitute Mr. Dowling for Mr. Kaladjian, therefore, is granted.
Respondents’ cross motion to dismiss the petition is denied. Petitioner and the intervenors have withdrawn their requests for injunctive relief and solely seek declaratory relief. Inasmuch as the issues raised herein require that the court pass on the validity of the State agency’s policy as embodied in Administrative Directive 86 ADM-7 (86 ADM-7) and determine whether this policy violates the State Constitution and section 133 of the Social Services Law, this article 78 proceeding must be converted to an action for declaratory judgment. (Erie County v Whalen, 57 AD2d 281, affd 44 NY2d 817; Matter of New York State Coalition of Pub. Empls. v New York State Dept. of Labor, 89 AD2d 283, affd 60 NY2d 789; see also, Matter of Zuckerman v Board of Educ., 44 NY2d 336, 343-344; CPLR 103 [c].)
Contrary to respondents’ assertions, petitioner Robert Pastore was not required to exhaust his administrative remedies prior to commencing this action. The doctrine of exhaustion of administrative remedies normally requires that a party first exhaust all available administrative channels before look *987 ing to the courts for relief. (See, CPLR 7801 [1]; Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52.) The exhaustion rule, however, is not inflexible and need not be followed where to do so would be futile or would cause irreparable injury. (See, Watergate II Apts. v Buffalo Sewer Auth. supra; Matter of Good Samaritan Hosp. v Axelrod, 150 AD2d 775.) In the case at bar, resort to a fair hearing would be futile, as the Hearing Officer would be required to follow the State policy under attack here which prohibits preinvestigative grants of assistance for immediate medical needs. (See generally, Matter of Johnson v Blum, 83 AD2d 731, affd 58 NY2d 454.)
The court finds that Robert Pastore, Charles and Marion Timmes and Belva and Kenneth Frank have standing to bring this action. These parties applied for Medicaid and other public assistance benefits, and requested that the City agency provide them with preinvestigative grants of assistance to meet their immediate medical needs. The City agency, consistence with the State’s policy (86 ADM-7), has not provided these applicants with such assistance, and has not provided them with notice denying such assistance. These parties have, thus, demonstrated that they were aggrieved by the State’s policy, as carried out by the City agency, and, therefore, have standing to challenge the administrative directive. (Cf., Matter of Davis v Perales, 151 AD2d 749, 752.)
Respondents assert that this action is moot, as the parties have now received either permanent or temporary Medicaid cards. An exception to the mootness doctrine exists, however, where there is "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues”. (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715.) In the case at bar, the issues raised involve questions of public importance, there is a likelihood of recurrence, and a likelihood that the issues will evade judicial review as the time in which an applicant will receive a Medicaid card is generally shorter than the time in which a fair hearing and review of the same is completed. Declaratory judgment, therefore, is a proper remedy to challenge a continuing policy and to review its legality. (Allen v Blum, 85 AD2d 228, affd 58 NY2d 954.) Inasmuch as this proceeding has now been converted to an action for declaratory judgment petitioners and the intervenors shall be designated the plaintiffs, the City and State agencies shall be *988 designated the defendants, and the petitions shall be deemed the complaints.
Plaintiffs all suffer from a variety of medical impairments which they assert required immediate medical attention during the pendency of their Medicaid and public assistance applications. Plaintiff Robert Pastore suffers from untreated severe cardiac arrhythmia (irregular heartbeat), and tachycardia (rapid heartbeat) resulting in chronic fatigue, blackouts and numbness in the hands and feet. Mr. Pastore filed an application with the City agency on June 11, 1993 for medical assistance (Medicaid) as well as home relief and food stamps. Mr. Pastore also requested a temporary grant of medical assistance to meet his immediate needs, which the City agency did not respond to. Mr. Pastore requested an emergency fair hearing on this issue on June 17, 1993 which was scheduled for June 21, 1993, and later adjourned to July 6, 1993. On June 22, 1993 Mr. Pastore withdrew his request for a fair hearing and commenced this action on June 24, 1993. In a notice dated June 28, 1993 Mr. Pastore was informed that he was eligible for home relief, food stamps and Medicaid, effective June 14, 1993. Mr. Pastore was issued a temporary Medicaid authorization card on July 6, 1993, which expired on July 24, 1993. Mr. Pastore did not receive a permanent Medicaid card until September 1993.
Plaintiff Charles Timmes was admitted to Deepdale General Hospital on May 15, 1993 for treatment of a heart attack, pneumonia and emphysema. Since his release from the hospital on May 19, 1993, Mr. Timmes has been connected to a nonportable breathing apparatus, and has not been able to return to work. Mr. Timmes obtained limited medical treatment in June 1993, and filed a disability claim with his employer, a McDonald’s restaurant. Marion Timmes suffers from coronary artery disease, and respiratory ailments but has been unable to obtain treatment and prescription medication due to her lack of funds. On June 17, 1993 Charles and Marion Timmes informed the City agency that they wished to apply for ongoing public assistance, food stamps and medical assistance. The Timmes’ representative specifically informed the City agency of Charles’ medical history, and requested preinvestigative funds to pay for Mr. Timmes’ medical treatment, prescription medications, medical supplies, and transportation to his physician’s office. The City agency conducted an eligibility interview at the Timmes’ residence on June 18, 1993, at which time they again requested preinvestigative *989 assistance to meet their immediate medical needs. Mr. Timmes has been unable to pay his doctor’s bill and to pay for prescription medication. On June 23, 1993 Mr. Timmes’ representative again requested immediate medical assistance, and on July 2, 1993 the City agency delivered a cash grant of $39.65 to meet their nonmedical needs. The Timmes thereafter requested a fair hearing, but no date was scheduled by the City agency. Charles and Marion Timmes commenced this intervener action by an order to show cause dated July 6, 1993, and they received permanent Medicaid cards on August 11, 1993.
Plaintiff Belva Frank is 61 years old and suffers from a variety of medical ailments. Mrs. Frank, a licensed practical nurse has been unemployed since 1988 when she sustained a job-related injury. Mrs. Frank supported herself and her husband Kenneth on the proceeds of a workers’ compensation settlement which is now alleged to be exhausted. Mr. Frank appeared to be suffering from malnutrition and lost over 50 pounds in a six-month period. On October 7, 1993 the Franks, by their representative, applied to the City agency for home relief, food stamps and medical assistance (Medicaid) and requested emergency medical assistance. On October 8, 1993 the Franks were interviewed at their home by a City caseworker, and a diagnostic evaluation was scheduled for Mr. Frank on October 12, 1993. The City agency did not provide any assistance and care to meet Mr. Frank’s immediate medical needs and did not make any provision for his transportation to the scheduled examination. On October 8, 1993 Mr. Frank was taken to the emergency room of Jamaica Hospital following a severe drop in blood pressure. Mr. Frank was admitted to the hospital and underwent surgery to remove a malignant tumor and a portion of his upper colon. On October 9, 1993 the Franks’ representative informed the City agency that Kenneth had been hospitalized, and requested medical assistance to meet his immediate needs pending the determination of their Medicaid applications. On October 14, 1993 the City agency informed the Franks’ representation that further documentation was needed concerning Mrs. Frank’s workers’ compensation settlement. The City agency also arranged for temporary Medicaid authorizations. Mrs. Frank signed the necessary Medicaid forms and provided her banking information to the City agency on October 14, 1993. On October 20, 1993 the Franks’ representative sent a letter to the City agency, stating, inter alia, that the client identification num *990 bers listed on the temporary Medicaid authorizations were not on file with the State agency’s computer system, so that a provider would not be able to verify their Medicaid eligibility. The City agency was also notified that the temporary cards were issued with expiration dates that improperly exceeded the State agency’s regulations. Mr. Frank was released from the hospital on October 30, 1993 and has been diagnosed as suffering from stage C cancer, which is spreading throughout his body and is fatal. The City agency provided the Franks with an emergency cash grant of $29.85 for nonmedical needs. On November 6, 1993 the Franks were informed by the City agency that it was unable to determine their eligibility for assistance due to incomplete documentation regarding the workers’ compensation settlement. The Franks filed another application for public assistance, Medicaid and food stamp benefits on November 8, 1993, and requested reconsideration of the original application. Mr. Frank was unable to obtain three prescribed medications including painkillers, due to the invalidity of the temporary Medicaid cards issued on October 14, 1993. Mr. Frank’s representative, through a not-for-profit organization, loaned Mr. Frank the funds needed to pay for these medications. On November 10, 1993 the City agency conducted an eligibility interview, and on November 16, 1993 provided the Franks with two emergency grants of home relief totaling $357. The within intervenor action was commenced on October 12, 1993, and Belva and Kenneth Frank were issued temporary Medicaid authorization cards on November 18, 1993.
Plaintiffs assert that the City agency’s failure to issue preinvestigative medical assistance to meet their immediate medical needs during the pendency of their Medicaid applications, and the State agency’s policy which prohibits such assistance is contrary to the provisions of section 133 of the Social Services Law, and of New York Constitution, article XVII, § 1. Plaintiffs, therefore, seek a declaration to the effect that the State agency’s administrative policy which is embodied in 86 ADM-7 and further stated in 93 INF-3 (informational letter) is in violation of section 133 of the Social Services Law and the State Constitution. Plaintiffs further seek a declaration to the effect that defendants are required by statute to provide preinvestigative assistance to meet an applicant’s medical needs during the pendency of the application for public assistance. Plaintiffs also seek an award of attorneys’ fees pursuant to CPLR article 86.
*991 Defendants, in opposition, assert that the Medicaid program does not authorize emergency preinvestigative Medicaid coverage. It is further asserted that neither section 133 of the Social Services Law nor the New York Constitution mandate the provision of temporary preinvestigative medical assistance. It is, therefore, asserted that the State agency’s policy and the City agency’s decision not to provide such assistance is consistent with applicable law. Defendants further assert that plaintiffs failed to show that they were entitled to temporary Medicaid coverage, or that an emergency situation existed which required medical assistance to meet their medical needs.
New York State law requires that an applicant for public relief must be assisted from Federally financed programs before exclusively State financed programs are available. (Social Services Law § 153.) New York State is obligated to provide Medicaid benefits to eligible applicants within 30 days from submission of the signed application, or within 90 days if eligibility is based on the applicant’s disability. (42 CFR 435.911 [a]; 18 NYCRR 360-2.4.) Medicaid recipients are entitled to reimbursement for covered medical expenses incurred and paid for during the three-month preapplication period. (42 USC § 1396a [a] [34]; 42 CFR 435.914.) Individuals, such as plaintiffs herein, who lack the financial resources to pay for medical expenses which may arise while their applications are pending, are not provided with any preinvestigative Medicaid coverage. Inasmuch as no such coverage exists under these circumstances under the Medicaid program, applicants may properly seek relief under State law.
The care of the needy in New York is not a matter of grace or charity, as the State has an affirmative constitutional duty to aid the needy. (NY Const, art XVII, § 1; Tucker v Toia, 43 NY2d 1.) Section 133 of the Social Services Law, enacted in 1940, provides that "[i]f it shall appear that a person is in immediate need, temporary assistance or care shall be granted pending completion of an investigation”. This section, thus, establishes the right of public assistance applicants to preinvestigative relief should it appear that they are in immediate need. (Gutowski v Lavine, 44 AD2d 649.) Furthermore, the statutory language makes the State’s duty to provide such assistance mandatory in the absence of any circumstances suggesting a contrary legislative intent. (See, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 94, 171, 177.) While *992 section 133 does not define the precise emergency relief which must be granted, subdivision (18) of Social Services Law § 2 provides that "[p]ublic assistance and care includes home relief, veteran assistance, aid to dependant children, medical assistance for needy persons, institutional care for adults and child care granted at public expense pursuant to this chapter” (emphasis added). There are no current regulations in force which implement section 133 of the Social Services Law. The State agency on March 3, 1986 issued an administrative directive, known as 86 ADM-7, in order to "clarify the responsibilities of local social service districts in meeting the needs of applicants for public assistance” (emphasis in original). 86 ADM-7 was expressly adopted in response to Gonzalez v Blum (127 Misc 2d 558) and Matter of Davis v Perales (137 Misc 2d 649, mod and affd 151 AD2d 749 [1989], supra). The petitioners in Gonzalez (supra) and Davis (supra) had alleged that the State agency was not adequately implementing section 133 of the Social Services Law.
86 ADM-7 provides that when an applicant for public assistance indicates that an emergency situation exists the local district must conduct an interview on the same day and must determine if the applicant has an immediate need. 86 ADM-7 provides that "[a]n emergency situation is a set of circumstances that often will require some action before the determination of eligibility is complete” and "[immediate needs are those needs resulting from an emergency situation that must be met the same day to insure the health and safety of individuals * * * An immediate need must be met unless the applicant is determined to be ineligible, regardless of the extent to which the investigation has been completed”. 86 ADM-7 further states that "[t]here are no formal provisions in the Medical Assistance Program which would permit 'presumptive eligibility’ or 'emergency pre-investigation coverage’, nor is there specific regulatory authority for local districts to pay for services for ineligible persons, even in emergency situations”. Under the guidelines set forth in 86 ADM-7, "[f]or situations in which the local social services district believes that the client requires immediate medical care, i.e., a life threatening situation, such individuals should be referred to a hospital. Under 10 NYCRR Part 405, hospitals are obligated to render care regardless an individual’s ability to pay * * * [applicants should be advised to seek medical care and advise the provider that if determined eligible during the period that medical services were rendered, Medicaid reimbursement may *993 be available for up to three months prior to the month of application”.
The State agency on January 8, 1993 issued an informational letter, known as 93 INF-3, which sought to further clarify the State’s policy regarding medical assistance. As regards immediate needs for prescription drugs (question No. 34), the letter states "[i]f a medical condition constitutes an emergency medical need, a referral to a hospital emergency room should be made. There is no 'emergency Medical Assistance’. However, EAF [Emergency Assistance to Needy Families with Children] can cover emergency medical needs not covered by the emergency room. EHR [Emergency Home Relief] cannot be directly used to meet a medical need. Rather, for applicants not EAF eligible the non-shelter grant, or a portion thereof, can be paid as a pre-investigation grant to meet needs normally covered under the non-shelter grant, which could include prescription drugs”. The State agency further addressed the issue of emergency medical needs (question and answer No. 34) stating that "[c]lients who have emergency medical need before eligibility is approved should be referred to a hospital emergency room for necessary treatment * * * After eligibility has been determined clients who have an emergency medical need should be issued either an emergency EMEVS card if possible or a DSS-2831A [form] to assure that medical needs will be met.”
The court finds that the plain language of section 133 of the Social Services Law only requires that an applicant have an immediate need, and not an emergency need. The State’s policy, as expressed in 86 ADM-7, which defines an immediate need as one arising out of an emergency situation, thus, is an improper attempt to amend the statutory provision. (See, Gutowski v Lavine, 44 AD2d 649, supra.) Moreover, the State and local agency’s duty to provide preinvestigative medical assistance to meet an applicant’s immediate needs does not begin and end at the hospital emergency room. The State agency’s policy as expressed in 86 ADM-7 and 93 INF-3 constitutes a clear attempt to pass off the immediate medical needs of Medicaid applicants to hospital emergency rooms, whether or not they are amenable to treatment there. The court finds that this constitutes an improper attempt to derogate the government’s responsibility to the needy. It is, therefore, the declaration of this court that section 133 of the Social Services Law requires that the State and City agency provide applicants for public assistance, including Medicaid applicants *994 with preinvestigative temporary assistance to meet their immediate medical needs. The court further declares that the provisions of 86 ADM-7 and 93 INF-3 which do not make available such temporary preinvestigative medical assistance, fail to properly implement the provisions of section 133 of the Social Services Law. The State agency, therefore, is directed to promulgate regulations or amend 86 ADM-7 or implement an administrative policy which provides for temporary preinvestigative medical assistance to meet an applicant’s needs, and to provide applicants with written notice of the availability of such preinvestigative assistance. (See, Matter of Davis v Perales, 151 AD2d 749, supra.) The court notes that while the State agency appears to permit the issuance of preinvestigation grants for prescription medication, such grants of assistance must be made available to all applicants with immediate needs, whether or not an "emergency” exists.
Plaintiffs’ request for attorneys’ fees pursuant to CPLR article 86 is denied. Article 86 is in derogation of the common law, as it shifts the obligation to pay legal fees to the State, in limited circumstances, and, therefore, is strictly construed. (Matter of Peck v New York State Div. of Hous. & Community Renewal, 188 AD2d 327.) CPLR 8602 (a) defines an action as "any civil action or proceeding brought to seek judicial review of an action of the state”. Therefore, as the within action is one for declaratory judgment, and not judicial review, attorneys’ fees pursuant to CPLR article 86 are not available.
In view of the foregoing, the motions for intervention are granted, the within proceeding is converted to an action for declaratory judgment, and declaratory relief is granted to the extent stated above. Plaintiffs’ request for attorneys’ fees is denied, and defendants’ cross motion to dismiss is denied.