OPINION OF THE COURT
Charles E. Ramos, J.
The plaintiffs seek an order declaring that persons who are HIV infected are entitled to emergency assistance from the City of New York if they have no shelter or are in need of different or more appropriate shelter. On behalf of themselves and a proposed class of individuals afflicted with HIV illness or with active AIDS, the plaintiffs have applied (or will apply) to defendant, the New York City Department of Social Services, for housing assistance, consisting of rent security deposits, brokers’ fees, and/or moving expenses.
Plaintiffs allege that they are entitled to be considered to be in emergency circumstances when they applied for assistance, that applications should be decided in 48 hours, and if approved, the aid should be issued by the end of the next working day.
The defendant denies that plaintiffs are in emergency circumstances because they possessed food, shelter, and clothing at the time they applied for aid. The defendant also contends that there is no statutory authority to support the plaintiffs’ contention that assistance must be provided within the abbreviated time frame plaintiffs assert. Additionally, the defendant opposes the certification of the class.
Specifically, plaintiffs seek (1) an order adding the proposed plaintiff-intervenors as plaintiffs; (2) class certification; (3) a preliminary injunction requiring defendant to immediately provide the plaintiff-intervenors with the assistance they have requested; (4) a declaration that defendant’s alleged practice of failing to make eligibility determinations of the applications for assistance consisting of brokers’ fees, rent security deposits, and/or moving expenses within 48 hours, and if applicant is found eligible, to issue assistance by the end of the next working day, is violative of State law; and (5) an order *79 requiring the defendant to make eligibility determinations on applications for assistance consisting of brokers’ fees, moving expenses, and/or rent security deposits within 48 hours of the request for such assistance.
The New York City Human Resources Administration (HRA) has been providing specialized case management to persons with AIDS and advanced HIV illness since 1985. The plaintiffs and proposed intervenors have all received housing benefits from the defendant. Before they moved to their new apartments, they resided in welfare hotels, SROs, with relatives, or in their own apartments.
Compelling as the plight of those afflicted by HIV may be, without a statutory foundation for the claims asserted herein, the power of this court to act on behalf of the plaintiffs is limited. Its power and the power of the executive and legislative branches of government are carefully defined, as are the roles each is intended to play in a democracy.
In the 18th century, the political theorist Charles Louis de Secondat, Baron de Montesquieu sought to describe the British Constitution. Although his interpretation was less than accurate it was a work of inspiration. The idealized form of democracy which Montesquieu described became the blueprint for modern democratic government, encompassing three branches: the executive, the legislative, and the judicial. In arguing for the separation of powers of each, which is the raison d’etre for the three branches, he stated:
"When the legislative and executive powers are united in the same person, or in the same body of magistrates there can be no liberty; because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner.
"Again, there is no liberty, if the power of judging be not separated from the legislative and executive powers. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary controul; for the judge would be then the legislator * * * By separating and keeping separate * * * the three great branches of government, they would act as a check upon each other and so preserve the liberties of the people.”*
Montesquieu’s interpretation of the British Constitution *80 greatly influenced the framers of both our State and Federal Constitutions resulting in the first intentional application of the doctrine of the separation of powers in any democracy.
The doctrine of the separation of powers which requires that issues of government policy be determined, and laws enacted, not by the courts, but by the executive and legislative branches of government is fundamental in American jurisprudence.
Alexander Hamilton wrote in the Federalist Papers (No. 78): "It can be of no weight to say that the courts, on the pretense of a repugnancy, may substitute their own pleasure to the constitutional intentions of the legislature. This might as well happen in the case of two contradictory statutes; or it might as well happen in every adjudication upon any single statute. The courts must declare the sense of the law; and if they should be disposed to exercise will instead of judgment, the consequence would equally be the substitution of their pleasure to that of the legislative body.”
These principles underlie the relationship between the branches of New York State’s government as well. "Nowhere has the doctrine thus established been applied more steadily or forcefully than in the courts of New York. (Matter of Davies, 168 N. Y. 89; Matter of State Ind. Comm., supra). The function of the judges 'is to determine controversies between litigants’ (Matter of State Ind. Comm., supra).” (Matter of Richardson, 247 NY 401, 411 [Cardozo, Ch. J.].)
And, in particular, involving claims that governmental benefits are inadequate, such as the case at bar.
"It is true, of course, that the judicial power has had its proper exercise in welfare questions. The courts will strike down any arbitrary legislative classification which denies to one class of needy persons public assistance which is available to all others (Matter of Lee v Smith, 43 NY2d 453). But what the courts cannot do, with a proper deference for and recognition of the doctrine of separation of powers, is to dictate the allocation of public resources and a wholesale reordering of public priorities (Jones v Beame, 45 NY2d 402).” (RAM v Blum, 103 Misc 2d 237, 240.)
"Broad policy choices, which involve the ordering of priorities and the allocation of finite resources, are matters for the executive and legislative branches of government and the place to question their wisdom lies not in the courts but elsewhere (see, Jones v Beame, 45 NY2d 402; Matter of Abrams *81 v New York City Tr. Auth., 39 NY2d 990).” (Jiggetts v Grinker, 75 NY2d 411, 415.)
"[A]id, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” (NY Const, art XVII, §1.)
However, this time-honored policy of New York courts not sitting as a superlegislature does not render this court powerless, particularly in actions against governmental bodies. Our courts have acted to use the law, not to make public policy in such situations, but rather to enforce rights that may have been violated due to departures from established procedures that were the result of either a legislative or executive response to the political process. Guided by the doctrine of the separation of powers, this court intends to enforce such rights as may have been violated without exercising legislative powers, for which it lacks constitutional authority.
The creation of the Division of AIDS Services (DAS) was a response to the public need and will. Three successive city administrations joined by the City Council with the support of other elected and political officials have funded DAS, which has a public mandate through our democratic process. The public has expressed the will to assist seriously ill people lacking shelter not only because of the suffering they face, but also because of the threat of pneumonia, tuberculosis, and other airborne respiratory infections which may be spreading due to substandard living conditions. The court’s decision addresses that public will as expressed by the Legislature.

Proposed Plaintiff-intervenors

As defendants have consented to the motion for intervention, proposed plaintiff-intervenors are added.

Class Certification

Plaintiffs move to certify a class consisting of HIV infected individuals, who have applied or will apply to defendant for assistance consisting of rent security deposits, brokers’ fees and/or moving expenses and who are: (1) without shelter; (2) living with relatives; (3) living in single room occupancy apartments; and (4) living in their own apartments.
The plaintiffs seek to have all four categories declared as *82 living in emergency circumstances and qualifying for emergency aid.
CPLR 901 (a) delineates five requirements that are prerequisite for certification of a class action: (1) the class is so numerous that joinder of all of the members is impractical; (2) there are common questions of law or fact which predominate over any questions affecting only individual members; (3) the claims or defenses of the representative parties are typical of those in the class; (4) the representative parties will adequately protect the interests of the class; and (5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
The proposed class does not satisfy all of the requirements set out in CPLR 901 (a).
I
The court will assume that the proposed class satisfies the numerosity requirements of CPLR 901 (a) (1). The number of persons who are HIV infected and applying for emergency housing assistance is not known. However, joinder of such people would be impractical particularly where the class would be partly defined by future claimants.
II
The requirement that common questions of law and fact predominate over issues affecting individual class members is not met. (CPLR 901 [a] [2].) This court finds the differing factual circumstances, particularly the degree of relative emergency between persons in the proposed class who find themselves in the various categories of housing status and of relative good or poor health, to be troublesome. Particularly so is the coupling by plaintiffs of individuals who this court finds to be in need of emergency housing assistance and those who may not be.
Although law and society have moved forcefully to protect HIV positive individuals from classification and stigmatization, unfortunately there still exists the facile generalization that all HIV positive individuals are alike. In the case at bar, the plaintiffs have also engaged in a similar generalization by making the proposed class membership too diverse with regard to living condition and medical condition. The effect of this impacts negatively upon those who truly need help, namely those HIV positive individuals who are at risk for *83 developing AIDS related complications such as tuberculosis and pneumonia, and individuals with full blown AIDS or complications, who are without shelter or are at risk of eviction.
The plaintiffs have selected those who fall into the four categories of living conditions set forth above, who desire different or improved housing accommodations and are HIV positive, thus missing the mark by not zeroing in on helping those who are in dire straits. Plaintiffs would have all four categories constitute a class entitled to emergency services, regardless of their particular circumstances. The class would encompass, on the one hand, persons living in the street, ill and disabled with AIDS, and on the other hand, otherwise well-functioning HIV positive individuals, who are not comfortable in their present surroundings.
The purposes for class certification and relief are ill served by such a diverse class. It would be inappropriate to benefit persons with such varied characteristics and needs as a class simply because they share an affliction, unless the need for that benefit bears a unique relationship to that affliction.
Living without shelter or in less than adequate housing are not characteristics of HIV infection, they are circumstances that complicate any serious illness. Tragic as HIV infection is, plaintiffs stand equal before the law together with others facing similar calamities. What has compelled this city and State to act to assist all persons in emergency circumstances is not what has caused their particular medical condition, rather the motivation has been the severity of their needs compared to the general population.
The error in granting the sought-for class certification is that the most desperate member of the class would be used as a yardstick to measure a new entitlement for the entire class, effectively diluting already scarce social service resources which everyone acknowledges are about to become even scarcer. Thus even that person who, while HIV infected, is still fully functional but unhappy with his/her home would be entitled to extraordinary relief, while that same treatment would be denied to others suffering devastating medical circumstances not caused by HIV infection.
The requested class certification does not satisfy the requirement of common questions of fact. The relative circumstances of individuals within the proposed class are too diverse and if there is a need for emergency assistance it is not related to *84 their illness. If there is a need for emergency housing assistance, it is shared with all affected, regardless of the cause of their ill health.
Ill
The claims of the proposed intervenor-plaintiffs are assumed to be typical of the claims of the unnamed class members, but suffer the same infirmity set forth in II above. (CPLR 901 [a] [3].)
IV
The court will assume that the plaintiffs will fairly and adequately represent the interests of the class pursuant to CPLR 901 (a) (4).
V
Finally, class action is not superior to other methods of adjudication in this case. (CPLR 901 [a] [5].)
The defendant invokes the "government operations” doctrine that class certification is inappropriate where relief is sought against a governmental agency. The rationale is that the government will protect the rights of future claimants under the doctrine of stare decisis. (Lamboy v Gross, 129 Misc 2d 564 [Sup Ct, NY County 1985], affd 126 AD2d 265 [1st Dept 1987].)
A judgment favoring the plaintiffs does bind the governmental body with respect to all persons similarly situated. This rationale has often led courts, including the Appellate Division of this Department, to deny applications for class action status to individuals challenging the actions of government officials. (Matter of Jones v Berman, 37 NY2d 42; Matter of Cohen v D’Elia, 55 AD2d 617 [2d Dept 1976]; Jiggetts v Grinker, 148 AD2d 1 [1st Dept 1989], revd on other grounds 75 NY2d 411 [1990], supra.) Class certification has been refused in circumstances where the record did not establish any government unwillingness to comply with a court order. (Matter of Fulton v Krauskopf 117 AD2d 198 [1st Dept 1986], revd on other grounds 70 NY2d 109.)
This court concludes that class certification is not warranted and is unnecessary to assure that claims raised by plaintiffs are judicially determined and that all potential plaintiffs will be protected, whether or not they have access to the courts.

*85
Preliminary Injunction

Plaintiffs seek (1) a declaration that defendant’s pattern of determining eligibility of requests for assistance filed by persons who are HIV positive violates New York law and (2) an order requiring defendant to make eligibility determinations for assistance filed by persons who are HIV positive within 48 hours, and if approved, issue the aid by the end of the next workday.
That all of these plaintiffs were eligible for housing assistance from the city is not disputed. In fact, all the named plaintiffs have received such assistance and thus have been enabled to move into new apartments so their cases are moot. However, the defendant addresses the core of the dispute here by its denial that all the plaintiffs are entitled to be given aid on an emergency basis and that eligibility determinations must be made within 48 hours.
The court grants the preliminary injunction requested as to the first category of the plaintiff’s proposed class, those who are disabled or seriously ill with AIDS and are without shelter, in part. The application is denied as to the other proposed class members and plaintiffs not falling within the first category. The plaintiffs have failed to establish a basis (a) upon which this court can direct the defendant to make the requested determinations within 48 hours and (b) upon which the defendant must consider those in categories 2 through 4 as living in emergency circumstances.
The papers submitted in opposition to the motion suggest that the defendant may not be willing to provide emergency services to those in the first category. In this instance there is no balancing of the equities. Our courts recognize that where the denial of appropriate emergency shelter will cause irreparable harm, preliminary relief is granted. (Slade v Koch, 135 Misc 2d 283, 290 [Sup Ct, NY County]; Tucker v Toia, 54 AD2d 322; McCain v Koch, 117 AD2d 198 [1st Dept 1986]; Lamboy v Gross, supra; Callahan v Carey, NYLJ, Dec. 11, 1979, at 10, col 4 [Sup Ct, NY County].)
In regard to the question of what constitutes an emergency and whether the court may define it for the purposes of ordering defendant to give aid to those applicants found to be in such a condition, examination of the relevant regulations and directives as promulgated by the legislative and executive branches is appropriate.
The following items describe the type of emergency housing *86 care available to eligible applicants and include descriptions of emergencies, which differ from the circumstances of the plaintiffs in categories 2-4.
(1) Title 8 of Social Services Law § 300 et seq. establishes the Emergency Assistance for Aged, Blind and Disabled Persons (EAA) program for disabled persons eligible for or receiving public assistance. The declaration of purpose defines emergency needs as those "which, if not met, would endanger the health, safety and welfare of’ the persons defined as eligible. (Social Services Law § 300 [1].) Payments are to be made to meet emergency needs specified in Social Services Law § 303. (Social Services Law § 300 [3].) Social Services Law § 303 (1) provides for household moving expenses when a change of residence is necessary because the health, welfare or safety of the eligible person is endangered. The EAA program is implemented by 18 NYCRR part 397. (Emergency Assistance for Adults.) 18 NYCRR 397.1 (b) defines emergency needs as those which, if not met would endanger the health, safety, and welfare of the needy persons. Specifically, section 397.5 authorizes housing aid.
(2) 18 NYCRR part 352, Standards for Assistance, provides for emergency shelter allowance to a household with an applicant or recipient of public assistance, who has AIDS or HIV related illness and is without shelter and has no viable and less costly alternative housing available. The social and medical needs of household members must be considered in making a determination concerning the availability of alternative housing. (18 NYCRR 352.3 [k].) 18 NYCRR 352.6, miscellaneous shelter allowances and grants, allows for aid to move to new shelter under conditions not expressly named emergencies. The move must be necessitated by a serious medical condition (18 NYCRR 352.6 [a] [1] [ii] [b]) or by a living situation that adversely affects the mental or physical health of the individual or family and the need for alternate housing is urgent, and not issuing a security deposit, moving expenses and/or brokers’ or finders’ fees would prove detrimental to the health, safety and well-being of the individual or family (18 NYCRR 352.6 [a] [1] [ii] [h]); or the individual or family is without shelter (18 NYCRR 352.6 [a] [1] [ii]).
(3) 92 Administrative Directive (ADM)-26 provides that emergency circumstances include situations in which an applicant has "a lack of items necessary for health and safety when there are no resources, including family and community resources, available to meet the emergency circumstances.”
*87 (4) 90 ADM-8 addresses emergency shelter allowances for persons who have AIDS or HIV related illness, are eligible for or in receipt of SSI, are without shelter and have no viable and less costly alternative housing available.
(5) 86 ADM-7 states an emergency situation exists when the applicants for aid state that they have no food, no shelter, an eviction notice, no fuel for heat during cold weather periods, a 72-hour utility disconnect notice, or are without "items necessary for the health and safety of individuals”, the latter to be determined on a case-by-case basis.
The foregoing regulations and directives allow enough scope for the court to decide when someone is in an emergency, even though such a decision might involve specific inquiries into individual circumstances.
Accordingly, this court finds that those severely ill persons falling within the definition of the first category (HIV infected individuals, who have applied or will apply to defendant for assistance consisting of rent security deposits, brokers’ fees and/or moving expenses and who are without shelter) are in emergency circumstances as defined by the Legislature. The defendant is directed to provide the assistance at issue herein on an emergency basis to those individuals without shelter who are HIV positive and severely ill or disabled.
The state of the law regarding emergency assistance does not provide that all of the plaintiffs or the proposed class fall within the State’s definition of emergency, and this court is without the constitutional power to decree that they do so, as aforesaid.
With regard to the time period within which the defendant is to make eligibility determinations, the plaintiffs rely upon administrative directives to support their claim that defendant must determine eligibility and issue benefits within 72 hours.
An administrative directive is a written communication from the State Commissioner of the State Department of Social Services to local social service districts providing directions to be followed in the administration of public assistance and care programs throughout the State. (Social Services Law § 20; Lamboy v Gross, 129 Misc 2d 564, supra.)
The plaintiffs’ reliance on the Application Procedure Manual is misplaced. That manual does not bind the defendant with its guidelines. It was developed for a particular program, the Department of Social Services Income Support program, *88 not assistance for those seeking moving expenses, rent security deposits, and brokers’ fees. As a manual addressed to agency employees it is not a substitute for properly promulgated statutes, rules and regulations.
Plaintiff’s application would expand the scope of entitlements by defining those who are in emergency circumstances to include all members of the proposed class, regardless of their actual living conditions. This would stand in opposition to the treatment afforded other citizens who may be afflicted with a calamity such as cancer, but who would be eligible for aid only if they are actually in emergency circumstances. The plaintiffs would have this court require that the State differentiate among the terminally ill differently based upon cause of illness, not severity of illness or stage of illness. Were this court to issue an order granting status entitling HIV positive individuals preference over other seriously ill individuals in housing assistance, without a legislative directive, such action would be a clear violation of the separation of powers doctrine.
To be granted a preliminary injunction, the moving party must show the likelihood of ultimate success on the merits; irreparable injury if the injunction is not granted; and a balancing of the equities in his/her favor. (Tucker v Toia, 54 AD2d 322, 324, supra.) The requirement of showing a likelihood of success should be seen as a protection against the exercise of the court’s formidable power to create new entitlements in cases where the moving party’s position, no matter how emotionally compelling, is without legal foundation. (Supra, at 326.)
The plaintiffs assert that the issues confronted by this court are similar to those decided by Judge Sifton in the action Brown v Giuliani (158 FRD 251) brought on behalf of recipients of Federal aid pursuant to the Aid for Families with Dependent Children (AFDC) program (42 USC § 607 et seq.). The Brown action differs from those presented here for a number of reasons.
In the first instance, the AFDC program contains Federal mandates that are imposed upon any State which accepts these Federal grants. Those mandates define who is entitled to benefits and set forth the time period for a completion of the agency’s investigation of the applicant’s eligibility (usually within 45 days, with emergency assistance given immediately).
The plaintiffs in the Brown case (supra) were not seeking a *89 determination that their status as a class entitled them to a special emergency category. Rather their claim was that the city was not in compliance with its obligation to provide them with mandated benefits under the Federal guidelines, their dispute was essentially a factual one over the question of compliance. Except for category 1, this dispute is a legal one which seeks to create a new class of persons entitled to be considered in emergency circumstances for the purpose of mandating aid. Finally, in the Brown case the parties had conducted discovery which provided a basis upon which a factual finding of noncompliance could be made.
The application for a preliminary injunction regarding the remaining members of the proposed class is denied.

 Smith, The Constitution: A Documentary and Narrative History, at 38 (1980).